No. 2015-7021

IN THE
UNITED STATES COURT of APPEALS
For The FEDERAL CIRCUIT

VETERANS JUSTICE GROUP, LLC,
*Petitioner*
v.

SECRETARY OF VETERANS AFFAIRS,
*Respondent*

On petition for review pursuant to 28 U.S.C. § 502.

# BRIEF OF *AMICI CURIAE* ANGELA K. DRAKE, BRIAN CLAUSS, YELENA DUTERTE, HUGH MCCLEAN, LAURIE FORBES NEFF, PATRICIA E. ROBERTS, SUSAN SAIDEL, STACEY-RAE SIMCOX, ANIELA SZYMANSKI, AND MICHAEL J. WISHNIE IN SUPPORT OF PETITIONER VETERANS JUSTICE GROUP, LLC

Angela K. Drake
Supervising Attorney and Instructor
The Veterans Clinic
University of Missouri School of Law
203 Hulston Hall
Columbia, MO 65211
*Counsel for Amici Curiae*

## CERTIFICATE OF INTEREST

Counsel for the amici certifies the following:

1. The full name of every party or *amicus* represented by me is:

   Angela K. Drake, Brian Clauss, Yelena Duterte, Hugh McClean, Laurie Forbes Neff, Patricia E. Roberts, Susan Saidel, Stacey-Rae Simcox, Aniela Szymanski, and Michael J. Wishnie, as reflected in their capacities in the Statement of Interest below.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   N/A

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   N/A

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   Angela K. Drake, Esq.
   The Veterans Clinic at the University of Missouri School of Law
   203 Hulston Hall
   Columbia, MO 65211

Dated: March 26, 2015

Respectfully Submitted,
/s/ Angela K. Drake
Angela K. Drake
*Counsel for Amici Curiae*

# TABLE OF CONTENTS

STATEMENT OF INTEREST OF *AMICI CURIAE* .......... vi

ARGUMENT .......... 1

A. General Legal Principles Concerning Agency Action .......... 1

B. The Statutes and Regulations at Issue .......... 2

1. The Statutes at Issue .......... 2

2. The Regulations at Issue .......... 3

3. Illustration of the Mechanics of the Regulation .......... 4

C. The Revised 38 C.F.R. § 3.155 Denies Veterans the One-Year Response Period to Which They are Statutorily Entitled .......... 6

1. The Regulation is Contrary to Statutory Language .......... 6

2. The Regulation is Contrary to Congressional Intent .......... 8

D. The Secretary Exceeded His Authority When Abandoning “Informal Claims” in Favor of Forms Requiring Technical Pleading .......... 11

CONCLUSION .......... 16

CERTIFICATE OF COMPLIANCE .......... 17

CERTIFICATE OF SERVICE .......... 18

# TABLE OF AUTHORITIES

## Cases

*Barrett v. Nicholson*, 466 F.3d 1038 (Fed. Cir. 2006) ....................................14

*Brokowski v. Shinseki*, 23 Vet. App. 79 (2009) ....................................13

*Brown v. Gardner*, 513 U.S. 115 (1994) .................................... 2

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). ...1, 2

*Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012). ....................12

*Devany v. U.S. by Veterans Admin.*, 366 F.2d 807 (2d Cir. 1966) ....................11

*Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339 (Fed. Cir. 2003) .................................... 6

*Guardians Ass'n v. Civil Serv. Comm'n of City of New York*, 463 U.S. 582 (1983) ....................................12

*Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428 (2011) ....................12

*N.L.R.B. v. Bell Aerospace Co. Div. of Textron*, 416 U.S. 267 (1974)....................11

*Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs*, 345 F.3d 1334 (Fed. Cir. 2003) ....................................1, 10

*Shinseki v. Sanders*, 556 U.S. 396 (2009)....................................12

*Smiley v. Citibank*, 517 U.S. 735 (1996) ....................................11

*United States v. Ramsey*, 431 U.S. 606 (1977) ....................................12

*Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305 (1985) ....................12

**Legislative Materials**

146 Cong. Rec. H9912-01 (2000), 2000 WL 1532572. ........................................13

149 Cong. Rec. E2462-03 (2003), 2003 WL 22799384 ........................................ 9

149 Cong. Rec. H11705-01 (2003), 2003 WL 22760520. ...................................... 9

149 Cong. Rec. S15133-01 (2003), 2003 WL 22722587. ....................................... 9

26 Fed. Reg. 1570 (Feb. 24, 1961) ........................................................9, 11

38 C.F.R. § 3.1 ..............................................................................13

38 C.F.R. § 3.155 ........................................................................ 2-4, 9

38 C.F.R. § 3.160 ........................................................................2, 13

38 U.S.C. § 5101 ............................................................................ 2

38 U.S.C. § 5102 ..................................................................... 3, 6, 8-9

38 U.S.C. § 5103 ............................................................................ 3

38 U.S.C. § 5103A .......................................................................... 3

38 U.S.C. § 5107 ............................................................................13

38 U.S.C. § 5110 ........................................................................3, 10

79 Fed. Reg. 57,660 (Sep. 25, 2014) ...........................................1, 4, 8, 13

H.R. Rep. No. 106-781 (2000) ..........................................................9, 13

## STATEMENT OF INTEREST OF *AMICI CURIAE*[1]

Amici curiae are law school clinics (or individual law school faculty members) devoted to representing veterans and other claimants in connection with benefits administered by the United States Department of Veterans Affairs. The amici[2] are:

- Angela K. Drake, in her individual capacity only and not on behalf of the University of Missouri or its affiliates, Supervising Attorney and Instructor of The Veterans Clinic, University of Missouri School of Law;
- Brian Clauss, Executive Director, Veterans Legal Support Center & Clinic, The John Marshall Law School;
- Yelena Duterte, Director, Veterans Legal Clinic, Syracuse University College of Law;
- Hugh McClean, in his individual capacity only and not on behalf of the University of Baltimore or its affiliates, Visiting Professor and Director, The Bob Parsons Veterans Advocacy Clinic, University of Baltimore School of Law;
- Laurie Forbes Neff, Director and Managing Attorney, Mason Veterans and Servicemembers Legal Clinic (M-VETS) formerly Clinic for Legal Assistance to Servicemembers and Veterans, George Mason University School of Law;

[1] Amici curiae submit this brief pursuant to Fed. R. App. P. 29(a) and Circuit Rule 29(c). Petitioner and Respondent consent to the filing of this brief. No party or party's counsel authored any of the brief or contributed money in connection with this filing and no person contributed money intended to fund its preparation or submission.

[2] Institutional affiliations of the amici are listed for identification purposes only with respect to those amici filing in their individual capacity; no position is taken on behalf of the institutions for those identified above as filing in his or her individual capacity only.

- Patricia E. Roberts, in her individual capacity only and not on behalf of The College of William and Mary or its affiliates, Director of Clinical Programs and Director of the Lewis B. Puller, Jr. Veterans Benefits Clinic, William & Mary Law School;

- Susan Saidel, Director, Veterans Law Clinic, Widener University School of Law;

- Stacey-Rae Simcox, Director, Veterans Advocacy Clinic, Stetson University College of Law;

- Aniela Szymanski, in her individual capacity only and not on behalf of The College of William and Mary or its affiliates, Lewis B. Puller, Jr. Veterans Benefits Clinic, William & Mary School of Law; and

- Michael J. Wishnie, William O. Douglas Clinical Professor of Law and Director, Veterans Legal Services Clinic, Yale Law School

Amici believe the Secretary's new regulations will detrimentally affect veterans in pursuit of the benefits to which they are entitled. Amici support the arguments of Petitioner, Veterans Justice Group, LLC in addressing the serious consequences the Secretary's new regulations have on the men and women who served this nation.

## ARGUMENT

This amicus brief focuses on two distinct issues relating to new regulations implemented by the Secretary of Veteran Affairs. First, we discuss the time limitation found in the new regulation, 38 C.F.R. § 3.155, relating to the amount of time within which a veteran may perfect his claim for benefits.[1] *See* 79 Fed. Reg. 57,660 (Sep. 25, 2014) (JA001-40). As more fully described below, the regulation arbitrarily shortens the statutory one-year time period within which a veteran may complete his claim. Second, we address significant technical changes in the claim "form" process that defeat pro-veteran statutory provisions.

### A. General Legal Principles Concerning Agency Action

The first step in determining whether an agency's regulation is a permissible interpretation of a statute is to ascertain "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). If it has, "the only question remaining is whether the regulation at issue is in accordance with congressional intent." *Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs*, 345 F.3d 1334, 1339-40 (Fed. Cir. 2003).

[1] Reference is made to a male veteran for simplicity, and not to discount the honorable service of the many women in our military.

If Congress is silent or ambiguous as to the precise question at issue, the agency is given broad discretion in its interpretation of governing statutes. *Chevron*, 467 U.S. at 843. However, when interpreting ambiguous veterans benefits statutes, “interpretative doubt is to be resolved in the veteran's favor.” *Brown v. Gardner*, 513 U.S. 115, 118 (1994).

**B. The Statutes and Regulations at Issue**

Recent regulations, specifically 38 C.F.R. §§ 3.155 and 3.160, exceed the Secretary’s administrative powers in three fundamental ways: (1) they are contrary to the governing statutes and congressional intent; (2) they fail to consider legitimate reliance on prior interpretations of these statutes; and (3) they fundamentally alter the current claim-making environment by shortening deadlines and imposing a higher standard of pleading on veterans seeking benefits.

**1. The Statutes at Issue**

Title 38 U.S. Code § 5101 provides that “[a] specific claim in the form prescribed by the Secretary . . . must be filed in order for benefits to be paid or furnished[.]” This language empowers the Secretary to create forms. It does not empower the Secretary to erect technical barriers or shorten deadlines within which veterans may provide necessary information.

The Secretary must also provide application forms upon request, notify veterans when their applications are incomplete, and inform veterans of the

information needed to complete the application." 38 U.S.C. § 5102(a)-(c). Importantly, § 5102 states that a veteran is given "one year from the date *such notice is sent*" by VA to complete the claim. § 5102(c) (emphasis added).

In keeping with the pro-veteran nature of the law, Chapter 51 further requires the Secretary to notify veterans of the evidence necessary to support the claim, going so far as to mandate that the Secretary assist the veteran in the collection of the evidence. 38 U.S.C. §§ 5103, 5103A.

Finally, Title 38 U.S. Code § 5110 provides that the "effective date" of an award for benefits "shall not be earlier than the date of receipt of *application* therefor." 38 U.S.C. § 5110(a) (emphasis added).[2] This particular statute makes no mention of a "complete claim," a novel requirement in the new regulations.

**2. The Regulations at Issue**

The prior regulation, 38 C.F.R. § 3.155, titled "Informal claims," was consistent with the statutory scheme described above and true to congressional intent. This regulation recognized any communication describing an "intent to file for one or more benefits" as an "informal claim." 38 C.F.R. § 3.155. The regulation provided that the Secretary would give a veteran who had filed such an

[2] The effective date of an award for benefits determines when benefits are payable. *See* 38 U.S.C. § 5110. An earlier effective date means more benefits for the veteran.

informal claim an application form to complete and gave the veteran one year *from the date notice was sent to complete the application and save the effective date. Id.*

In contrast, the new regulation pigeonholes veterans' communications with VA into strict regulatory slots. The new regulation, titled "How to file a claim," sorts a veteran's communication with VA into one of four categories: 1) a "request for an application for benefits"; 2) an "intent to file a claim;" 3) an "incomplete application form;" or 4) a "complete claim." 79 Fed. Reg. at 57,695-96 (JA037-38). There is no "informal claim" akin to the prior § 3.155, as even the new "intent to file" provision requires the use of a specific electronic or paper form, or communication with a designated VA employee. *Id.*

With respect to the "intent to file" and "incomplete application forms" provisions, revised § 3.155 does not provide the one-year saving period following notice from the Secretary. Specifically, § 3.155 (b) provides that "[i]f VA receives a complete application form prescribed by the Secretary . . . within 1 year *of receipt of the intent to file a claim*, VA will consider the complete claim filed as of the date the intent to file a claim was received." *Id.* Section 3.155(c) follows the same time format with respect to an incomplete application.

**3. Illustration of the Mechanics of the Regulation**

For purposes of illustrating the effect of the new regulation, consider Veteran JWG, who served with the 101st Airborne in Vietnam. He sees his private

doctor for chronic knee issues. The doctor reminds JWG that jumping out of airplanes may have caused these knee issues and suggests that JWG contact VA for disability compensation.

JWG prepares a handwritten letter to his local VA Regional Office requesting benefits. He does not fill out any specific forms. At 80 years old, JWG is not familiar with electronic forms. In his letter, JWG identifies his knee issues generally, asks for compensation, and includes his service number.

Under the prior regulation, JWG's letter asserted an "informal claim." Upon receipt of this informal claim, VA was bound under the law and regulations to send JWG an application. For purposes of this illustration, we will assume VA received JWG's letter on February 20, 2015 and sent JWG an application on March 31, 2015.[3]

Under the prior regulation, JWG would receive an "effective date" for his benefits of February 20, 2015, as long as he returned the application to VA within one year of the date the application form was sent: on or before March 31, 2016.

Under the new regulation, JWG does not receive this one-year time period. Because of the regulation's strict categorization, his letter is now considered a

[3] Our experience has been that VA does not respond to communications within 45 days. The very first client of the University of Missouri's Veterans Clinic, AAP, sent a letter to VA requesting that her PTSD claim be re-opened on November 13, 2013 (after her receipt of a letter from Director Murphy concerning military sexual trauma cases). AAP's claim was not noted by VA in its system until May 21, 2014, after AAP's trip to the VA Regional Office to determine the status of her claim.

"request for an application" and not an "intent to file a claim" because JWG did not file electronically, did not use the paper form, and did not speak to a designated VA representative. 79 Fed. Reg. at 57,695-96 (JA037-38). Although the new regulation provides that VA will send JWG an application form, there is no one-year saving provision.

**C. The Revised 38 C.F.R. § 3.155 Denies Veterans the One-Year Response Period to Which They are Statutorily Entitled**

As discussed below, this regulation conflicts with the law.

**1. The Regulation is Contrary to Statutory Language**

The governing statute, 38 U.S.C. § 5102(c), gives veterans one year *from the date the Secretary's notice is sent* to complete any incomplete application. 38 U.S.C. § 5102(c). *See also Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339 (Fed. Cir. 2003) (holding that Congress did not authorize the VA to enact a thirty-day response period, despite such a rule's potential to reduce claim processing time). The statutory language is explicit on this point. The new regulation strips veterans of this statutory protection. Now, under the new 38 C.F.R. § 3.155(b) and (c), the veteran receives one year from his *submission* of an intent to file or incomplete claim, not one year from *notice* from the Secretary, as required by law.

Returning to our illustration, the chronology appears as follows, with the addition of an actual rating decision awarding benefits on the veteran's claim:

*2/20/15 - VA receives JWG letter*
*3/31/15 - Secretary sends notice/application*
*3/31/16 – VA receives JWG response*
*4/02/17 – Rating Decision finding service connection; 60% disabling*[4]

Under the old regulation, JWG would be entitled to receive a retroactive payment in the amount of $24,216 (24 months at $1,009/month) because his effective date was February 20, 2015.[5] Now, however, JWG receives no benefit for the time period between February 20, 2015, and March 31, 2016, and his past-due benefits amount to only $12,108. In the new regulatory regime, JWG receives only half of his benefits because the Secretary has wrongfully created deadlines valuing efficiency over veterans' rights.

As in the illustration above, the difference between the date a veteran advises VA of his desire for benefits and the date VA notifies the veteran additional information or forms are needed could easily become substantial. There are no specific procedural safeguards in place to mandate that this elapse of time be minimized. To be sure, it is entirely unclear when the VA will notify veterans of the information needed to complete their applications. Given VA's historically

[4] Calculated by reference to VA, *The Monday Morning Workload Report*, http://benefits.va.gov/REPORTS/detailed_claims_data.asp#Reports (where the average number of days to complete was 366.2, as of February 16, 2015).
[5] And up to $1,383/month depending on the number of the veteran's dependents. VA, *Veterans Compensation Benefits Rate Table*, http://www.benefits.va.gov/COMPENSATION/resources_comp01.asp (effective Dec. 1, 2014).

long claims completion times—averaging longer than twelve months—VA might easily wait several weeks or months to notify veterans of incomplete claims.[6]

The Secretary's comments to the proposed regulations suggest that VA may configure an automatic reply to electronic forms that would detail what is needed to complete the application (though there is nothing in the regulations actually requiring this approach). 79 Fed. Reg. at 57,668 (JA010). But an automatic reply does nothing for veterans who apply using non-electronic means, like the elderly, the homeless, or the illiterate.[7] Surely the statutory protections extend to *all* veterans, whether they communicate electronically, on paper, or orally.

**2. The Regulation is Contrary to Congressional Intent**

We recognize that the time limitation found in 38 U.S.C. § 5102(c) speaks to "barring" benefits when information is not received within one year of a request from the Secretary. The statute does not specifically state a veteran is "entitled' to one year to provide the information: "[i]f information . . .is not received by the

---

[6] *See supra* notes 3 and 4. Currently-open claims have been pending an average of 260.5 days, with no ready completion date in sight. VA, *VBA Benefits and Compensation Measures*, http://www.app.hospitalcompare.va.gov/index.cfm (last updated March 20, 2015, 2:17 P.M.).

[7] More than half of the nation's veterans are over age 60 (12,170,000 of a national 22,299,000 veterans). VA, *Veteran Population*, http://www.va.gov/vetdata/veteran_population.asp (last updated Nov. 7, 2014). There are approximately 50,000 homeless veterans on any given day. U.S. Department of Housing and Urban Development, *HUD, VA, and USICH Announce 33% Drop in Veteran Homelessness Since 2010* (Aug. 26, 2014), http://portal.hud.gov/hudportal/HUD?src=/press/press_releases_media_advisories/2014/HUDNo_14-103; *see also infra* p. 14, detailing Veteran GV's experience as an illiterate veteran.

Secretary within one year from the date such notice is sent, no benefit may be paid." § 5102(c). However, the logical and necessary inference from this language is that a veteran must be allowed one year to respond. Only such a construction gives meaning to congressional intent.

The Veterans Benefits Act of 2003 made congressional intent quite clear on this point. Section 5102(c), containing the one-year time limit, borrowed its language from an identical provision in § 5103. H.R. Rep. No. 106-781, at 9-11 (2000). This language "was intended to provide claimants with one year to submit information or evidence requested by the Secretary of Veterans Affairs." 149 Cong. Rec. E2462-03 (2003), 2003 WL 22799384.[8] In amending § 5102 to include the time limitation provision, congressional records indicate that this intent remained the same. *See* 149 Cong. Rec. S15133-01 (2003), 2003 WL 22722587.

Indeed, since 1961, the regulations have given veterans one year to complete "informal" claims, calculated from the date VA *notified* the applicant more information was required. 26 Fed. Reg. 1570 (Feb. 24, 1961). This one-year period has never been calculated from the date of filing the imperfect claim itself, a rule now entrenched in the regulation. *Id. See also* 38 C.F.R. § 3.155.

---

[8] This language could be interpreted to bar consideration of evidence *on appeal*, however, and so was updated in § 5103 to remove only that statutory bar, while remaining the same in § 5102. 149 Cong. Rec. H11705-01 (2003), 2003 WL 22760520.

Congress recognized that veterans would submit incomplete applications. It therefore directed the Secretary to notify veterans of the information required to complete the application. *See* § 5102(b). Notably, in § 5110(a), governing effective dates, Congress made no distinction between "complete" and "incomplete" applications: to the contrary, the statute provides that the effective date of an award "shall not be earlier than the date of *receipt of application* therefor." § 5110(a).

When read with other applicable provisions of law, § 5110's reference to "receipt of application" cannot be construed to mean "receipt of *complete claim*." Accordingly, the Secretary's grafting of the "complete claim" concept into the claim process cannot be harmonized with Congress' selective use of the word "application" in Chapter 51. If Congress did not intend to pay benefits from the date of an *incomplete* application, the one-year period in which to respond to notices from the Secretary would be meaningless and unnecessary. The Secretary's new regulation conflates "application" as found in the statutory language with its own "complete claim" form requirement.

Even if the Secretary notified veterans of missing information six days after their incomplete submissions, that would still be six days less than what Congress intended veterans to have. This is an unauthorized deviation from a statutory mandate. *See Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs*, 345 F.3d

1334, 1344-45 (Fed. Cir. 2003). The regulatory changes to the claim-making process thus contravene the plain language of the law and Congress's clear intent.

### D. The Secretary Exceeded His Authority When Abandoning "Informal Claims" in Favor of Forms Requiring Technical Pleading

As noted above, since 1961, veterans could commence a claim "informally." The Secretary's new regulations, however, erase not only the term "informal claim" but also the solicitude toward veterans that it embodies. The new regime calling for "requests for applications," "intent to file forms," "incomplete applications" or "complete claims" fails to consider legitimate reliance on prior interpretations, and it is therefore unlawful.

While an agency may change its interpretation of terms found in its regulations, its discretion to do so is limited. *Smiley v. Citibank*, 517 U.S. 735, 742 (1996). Such changes must not be sudden, must be well-explained, and must take into account legitimate reliance on current interpretations. *Id.* The Secretary's new regulations do not meet these standards and are therefore arbitrary and capricious.

The statutory and regulatory terms "claim," "informal claim," and "request for application" have been litigated for over five decades, and their meanings are now well established. *See, e.g.*, 26 Fed. Reg. 1570 (Feb. 24, 1961); *Devany v. U.S. by Veterans Admin.*, 366 F.2d 807 (2d Cir. 1966). Veterans and their representatives rely on these long-standing meanings. The adverse consequences ensuing from veterans' reliance on the earlier informal claim process are so

substantial that they preclude the drastic changes found in the new regulations. *contra N.L.R.B. v. Bell Aerospace Co. Div. of Textron*, 416 U.S. 267, 295 (1974). The new regulations result in the "unfair surprise" against which the Supreme Court has long warned. *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2167 (2012).

Moreover, "a long-standing and consistent administrative interpretation of a statute is entitled to special weight." *Guardians Ass'n v. Civil Serv. Comm'n of City of New York*, 463 U.S. 582, 619-20 (1983). Indeed, the consistent construction of the statutes in question by a series of changing administrations over a span of fifty years "must be accorded great respect. If the [Secretary] perceives that new conditions justify enlargement of the authority that had been found adequate for over [half of] a century, then these matters should be brought to the attention of Congress." *United States v. Ramsey*, 431 U.S. 606, 631 (1977).

In this regard, it bears re-emphasizing that existing laws explicitly establish a nonadversarial claim process. The Secretary has no authority to fundamentally alter this premise. The Supreme Court has repeatedly described the veterans benefits system as informal and nonadversarial. *See, e.g., Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428 (2011); *Shinseki v. Sanders*, 556 U.S. 396 (2009); *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 309, 311 (1985). The new regulations place new burdens on veterans. These changes are so

contrary to the existing framework that they should only be accomplished through Congress, not by the Secretary's implementation of regulations.

Specifically, the new regulations impose a higher burden on veterans in the claims process by defining a claim in 38 C.F.R. § 3.1(p) as:

> a written communication requesting a determination of entitlement or evidencing a belief in entitlement, to *a **specific** benefit under the laws administered by the Department of Veterans Affairs submitted on an application form prescribed by the Secretary*.

79 Fed. Reg. at 57,694 (JA036) (emphasis added). Further, § 3.160(a) requires veterans to include a "description of any symptom(s) or medical condition(s) on which the benefit is based" and *to the extent the form prescribed by the Secretary so requires[.]" Id.* at 57,696 (JA038) (emphasis added).

These regulatory requirements are an unwelcome echo of the "well-grounded claim" requirement that Congress explicitly rejected in the Veterans Claims Assistance Act of 2000. *See* H.R. Rep. No. 106-781, at 3 (2000); 38 U.S.C. § 5107. That Act reaffirmed Congress' intent to maintain the process's "uniquely low threshold" for making a claim. 146 Cong. Rec. H9912-01 (2000), 2000 WL 1532572. The current law protects veterans from technical pleading requirements. *Id. See also Brokowski v. Shinseki*, 23 Vet. App. 79, 85 (2009) ("The claimant's identification of the benefit sought does not require any technical precision.")

The system has remained informal and nonadversarial with good reason. Lawyers cannot be paid for work at the initial claim level, so veterans are often left

to fend for themselves when making these claims. *See* Pet. Br. 27-29. Congress has long recognized that the veterans making claims are the very veterans who have been physically or emotionally scarred in service. Because of their health conditions, those making claims for relief need all of the solicitude Congress intended for them to have. And, in addition to their service-incurred wounds, many veterans have further frailties, ranging from age to homelessness to illiteracy.[9]

This is powerfully demonstrated by veteran GV, a recent intake of the Puller Veterans Benefits Clinic at William & Mary. GV has struggled with symptoms of Post-traumatic Stress Disorder since his time in the service, and his healthcare providers have advised him several times to seek benefits. However, GV is illiterate. Because of VA's prior informal claim-making process, GV was able to speak with someone at a VA hospital to initiate his claim. But upon being given a form, GV has not been able to complete his claim. Were it not for the Puller Clinic, GV may have abandoned his claim altogether. Technical pleading requirements like those found in the new regulations would have deprived GV from making the claim he was entitled to make, as a benefit of his service to our nation.

* * * * *

"The government's interest in veterans cases is not that it shall win, but rather that justice shall be done, that all veterans so entitled receive the benefits due

[9] *See supra* note 8.

to them." *Barrett v. Nicholson,* 466 F.3d 1038, 1044 (Fed. Cir. 2006). The Secretary's new rules create barriers to justice for veterans, denying them benefits to which they may be entitled in order to promote efficiency. While Congress has the option to change the claims-making process by overwriting existing statutory protections, it has not done so. Congress has consistently valued veterans' rights above efficiency. Indeed, with an increase in claims backlog, Congress has opted to increase the budget to allow for more processing manpower, rather than enact more "efficient" procedural shortcuts that would undercut veterans' rights. The Secretary's interpretation of Congress' statutory benefits framework is inconsistent with congressional protections and therefore beyond the scope of the Secretary's authority.

## CONCLUSION

For the foregoing reasons, the amici curiae urge the Court to grant the Petitioner's challenge to the Secretary's rulemaking.

Respectfully Submitted,

/s/ Angela K. Drake
Angela K. Drake[10]
Supervising Attorney and Instructor
Veterans Clinic
University of Missouri School of Law
203 Hulston Hall
Columbia, MO 65211
*Counsel for Amici Curiae*

[10] Students Angela B. Kennedy (2L) and Charles N. Dunville (3L) of the University of Missouri School of Law and students Kellye Beathea (3L) and Patrick Gracyalny (3L) of the University of Baltimore School of Law provided research and writing support for this brief.

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 4,318 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).
2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the types style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

/s/ Angela K. Drake
Angela K. Drake
Supervising Attorney and Instructor
Veterans Clinic
University of Missouri School of Law
203 Hulston Hall
Columbia, MO 65211
*Counsel for Amici Curiae*

March 26, 2015

## CERTIFICATE OF SERVICE

I hereby certify, that on this 26th day of March, 2015, a true and correct copy of the foregoing Brief of *Amici Curiae* was timely filed electronically with the Clerk of the Court using CM/ECF, which will send notification to all counsel registered to receive electronic notices.

/s/ Angela K. Drake
Angela K. Drake
Supervising Attorney and Instructor
Veterans Clinic
University of Missouri School of Law
203 Hulston Hall
Columbia, MO 65211
*Counsel for Amici Curiae*