2015-7021

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

VETERANS JUSTICE GROUP, LLC

Petitioner,

v.

SECRETARY OF VETERANS AFFAIRS,

Respondent.

On petition for review pursuant to 38 U.S.C. § 502

BRIEF FOR RESPONDENT

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

MARTIN F. HOCKEY, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 616-0319

Attorneys for Respondent

OF COUNSEL:

DAVID J. BARRANS
Assistant General Counsel

BRIAN D. GRIFFIN
Deputy Assistant
General Counsel
Department of Veterans Affairs
810 Vermont Ave., N.W.
Washington, D.C. 20420

June 12, 2015

## TABLE OF CONTENTS


STATEMENT OF THE ISSUE ........................................................................1

STATEMENT OF THE CASE SETTING OUT RELEVANT FACTS ...................2

I. Background And Prior Regulations ....................................................2

II. The Proposed Rule ..........................................................................4

III. Public Comments ............................................................................8

IV. The Final Rule ................................................................................8

SUMMARY OF THE ARGUMENT .......................................................11

ARGUMENT ..........................................................................................13

I. Standard And Scope Of Review .........................................................13

II. The Final Rule's Changes To The Initial Claims Process Are Valid ..................................................................................14

A. The Secretary May Require A Standard Application Form ...................................................................................14

B. The Final Rule Is Not Adversarial ............................................19

C. VA's Claim Adjudication Responsibilities Have Not Been Altered By The Regulation .............................26

1. 38 U.S.C. § 5107(b) Is Not To The Contrary .................30

2. *Cushman* Is Not To The Contrary ..................................31

3. The *Hodge / Roberson* Line Of Cases Is Not To The Contrary .........................................................................34

4. The Agency Is Entitled To *Chevron* Deference ............42

D. 38 U.S.C. § 5102(c) Is Not To The Contrary ....................44

III. The Final Rule's Requirements Concerning NOD's Are Valid .........48

A. The Secretary's Rulemaking Authority Extends To NOD's ....48

B. What Constitutes A "Notice Of Disagreement" Cannot Be Answered At *Chevron* "Step One" ....................49

C. The Final Rule Does Not Require Unreasonable Specificity ...51

1. The Revised Rule Is In Accord With Prior Regulations ....................53

2. Petitioner's Argument From *Maggitt* and *Ledford* Is Inapposite....................55

3. The Final Rule Is Not Inconsistent With Section 7105 ....................56

IV. The Attorney Representation Argument Is Inapposite And Without Merit....................57

CONCLUSION....................58

# TABLE OF AUTHORITIES

## Cases

*Brannon v. West*,
12 Vet. App. 32 (1998)........................................................................41

*Brokowski v. Shinseki*,
23 Vet. App. 79 (2009)........................................................................ 3, 24

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837, 104 S.Ct. 2778 (1984) ........................................................ passim

*Clemons v. Shinseki*,
23 Vet. App. 1 (2009)..........................................................................41

*Collaro v. West*,
136 F.3d 1304 (Fed. Cir. 1998)................................................................54

*Comer v. Peake*,
552 F.3d 1362 (Fed. Cir. 2009)................................................................38

*Criswell v. Nicholson*,
20 Vet. App. 501 (2006)........................................................................41

*Cushman v. Shinseki*,
576 F.3d 1290 (Fed. Cir. 2009)................................................. 31, 32, 33

*Disabled American Veterans v. Gober*,
234 F.3d 682 (Fed. Cir. 2000)................................................... 13, 14, 23

*Eurodif S.A. v. U.S.*,
423 F.3d 1275 (Fed. Cir. 2005)................................................................43

*Fleshman v. West*,
138 F.3d 1429 (Fed. Cir. 1998)................................................................ passim

*Gallegos v. Principi*,
283 F.3d 1309 (Fed. Cir. 2002) ........................................................ 12, 49, 50, 51

*Hamilton v. Brown*,
39 F.3d 1574 (Fed. Cir. 1994) ..........................................................................49

*Henderson v. Shinseki*,
131 S.Ct. 1197 (2011) .....................................................................................21

*Hodge v. West*,
155 F.3d 1356 (Fed. Cir. 1998) ........................................................ 34, 36, 41, 43

*Jones v. West*,
136 F.3d 1296 (Fed. Cir. 1998) .............................................................. 18, 39, 42

*Ledford v. West*,
136 F.3d 776 (Fed. Cir. 1998) .......................................................... 54, 55, 56, 57

*Mackey v. Montrym*,
443 U.S. 1, 13 S.Ct. 2612, 61 L.Ed.2d 321 (1979) ............................................33

*MacPhee v. Nicholson*,
459 F.3d 1323 (Fed. Cir. 2006) .............................................................. 40, 41, 43

*Maggitt v. West*,
202 F.3d 1370 (Fed. Cir. 2000) ..................................................................... 55, 57

*Mansfield v. Peake*,
525 F.3d 1312 (Fed. Cir. 2008) .................................................................... passim

*Mortg. Investors Corp. of Ohio v. Gober*,
220 F.3d 1375 (Fed. Cir. 2000) .........................................................................14

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d. 443 (1983) ........................................14

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Services*,
545 U.S. 967, 125 S.Ct. 2688, 162 L.Ed.2d. 820 (2005) ....................................43

*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*,
260 F.3d 1365 (Fed. Cir. 2001) .......... 14

*Nat'l Org. of Veterans Advocates, Inc. v. Sec'y of Veterans Affairs*,
669 F.3d 1340 (Fed. Cir. 2012) .......... 14, 46

*Nyeholt v. Sec'y of Veterans Affairs*,
298 F.3d 1350 (Fed. Cir. 2002) .......... 13

*Parks v. Shinseki*,
716 F.3d 581 (Fed. Cir. 2013), *cert. denied*, 134 S.Ct. 2661 (2014) .......... 57

*PVA v. Sec'y of Veterans Affairs*,
345 F.3d 1334 (Fed. Cir. 2003) .......... 21, 36

*Rice v. Shinseki*,
22 Vet. App. 447 (2009) .......... 38

*Roberson v. Principi*,
251 F.3d 1378 (Fed. Cir. 2001) .......... passim

*Rodriguez v. West*,
189 F.3d 1351 (Fed. Cir. 1999) .......... 3, 24

*Sears v. Principi*,
349 F.3d 1326 (Fed. Cir. 2003) .......... 12, 22, 23

*Sickels v. Shinseki*,
643 F.3d 1362 (Fed. Cir. 2011) .......... 55

*Szemraj v. Principi*,
357 F.3d 1370 (Fed. Cir. 2004) .......... 34, 39

*Terry v. Principi*,
340 F.3d 1378 (Fed. Cir. 2003) .......... 31

*Walters v. Nat'l Ass'n of Radiation Survivors*,
473 U.S. 305; 105 S.Ct. 3180 (1985) .......... 4, 32, 33

**Statutes**

5 U.S.C. §§ 701-706 .......... 13

5 U.S.C. § 706 .......... 14

38 U.S.C. § 101 .......... 14, 49

38 U.S.C. § 501 .......... passim

38 U.S.C. § 502 .......... 2, 13

38 U.S.C. § 1110 .......... 2, 33

38 U.S.C. § 1131 .......... 2

38 U.S.C. § 1151 .......... 17

38 U.S.C. § 5101 .......... passim

38 U.S.C. § 5102(a) .......... passim

38 U.S.C. § 5103 .......... 36

38 U.S.C. § 5103A .......... 20, 21, 25, 36

38 U.S.C. § 5104 .......... 3

38 U.S.C. § 5107 .......... 22, 25, 30, 31

38 U.S.C. § 5110 .......... 2, 35, 46

38 U.S.C. § 5121(a) .......... 18, 42

38 U.S.C. § 5904 .......... 13, 57

38 U.S.C. § 7105 .......... passim

38 U.S.C. §§ 7106, 7107, 7108 .......... 48

Honoring America's Veterans And Caring For Camp Lejeune Families Act Of 2012, Pub. L. 112-154 § 504, 126 Stat. (Aug. 6, 2012) ..............................36

**<u>Regulations</u>**

38 C.F.R. § 3.1 ....................................................................................15

38 C.F.R. § 3.103 ............................................................................ 3, 30, 35

38 C.F.R. § 3.155 ............................................................................ passim

38 C.F.R. § 3.156 ....................................................................................26

38 C.F.R. § 3.157 ....................................................................................40

38 C.F.R. § 3.159 ............................................................................ passim

38 C.F.R. § 3.160 ............................................................................ passim

38 C.F.R. § 19.24 ............................................................................ 52, 55

38 C.F.R. § 20.201(2014) ................................................................ passim

*Standard Claims and Appeals Forms*, 78 Fed. Reg. 65490 (Oct. 31, 2013) .........................................................3

*Standard Claims and Appeals Forms*, 79 Fed. Reg. 57660 (September 25, 2014).............................................2

**Miscellaneous**

H.R. Rep No. 100-963 (1988) *reprinted in* 1988 U.S.C.C.A.N. 5782 .............34, 35

H.R. Rep. No. 112-241 (Oct. 6, 2011)..................................................36

## STATEMENT OF RELATED CASES

Pursuant to Rule 47.5, respondent's counsel states that he is unaware of any other appeal in or from this action that previously was before this Court or any other appellate court under the same or similar title.

Counsel states that this case is related to the following four cases:  The Court has determined that this case is a companion case to *NOVA v. DVA*, No. 15-7025 and *American Legion v. DVA*, No. 15-7061, which concern the same regulation. The Court has determined that all three cases will be assigned to the same merits panel for oral argument.

Two additional petitions were filed regarding the same final rule: *Paralyzed Veterans of American v. DVA*, No. 15-7080; and *Disabled American Veterans v. DVA*, No. 15-7081.  While those matters will be heard by a separate panel, this case is likely to have a significant precedential effect on those petitions.

BRIEF FOR RESPONDENT

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

2015-7021

---

VETERANS JUSTICE GROUP, LLC
Petitioner,
v.

SECRETARY OF VETERANS AFFAIRS,
Respondent.

---

STATEMENT OF THE ISSUES

1. Whether the Department of Veterans Affairs (VA or Secretary) regulations requiring that all claims originate (1) on standard application forms, or (2) on specified placeholder communications (that hold a claimant's effective date of benefits for up to one year until being perfected by the filing of a standard application form), are a reasonable exercise of the Secretary's authority and otherwise are not arbitrary, capricious, an abuse of discretion or inconsistent with law.

2. Whether the Secretary's regulations requiring that Notices of Disagreement (NOD) be on standard forms are a reasonable exercise of the

Secretary's authority and otherwise are not arbitrary, capricious, an abuse of discretion or inconsistent with law.

STATEMENT OF THE CASE SETTING OUT RELEVANT FACTS

The Veterans Justice Group LLC (petitioner) seeks review under 38 U.S.C. § 502 of VA's final rule making changes to 38 C.F.R. parts 3, 19, and 20, which generally require all claims and appeals to originate on standard forms. VA Notice of Final Rulemaking, "Standard Claims and Appeals Forms," 79 Fed. Reg. 57660 (September 25, 2014) (the "final rule"); *see* Joint Appendix (JA)1-40.

I. Background And Prior Regulations[1]

Veterans are entitled to compensation for disabilities incurred in or aggravated by active military service. 38 U.S.C. § 1110, 1131. Benefits are paid on a monthly basis beginning on the claim's effective date which is generally the date of the receipt of the application. 38 U.S.C. § 5110(a).

In order for benefits to be paid or furnished under the laws administered by VA, "[a] specific claim in the form prescribed by the Secretary . . . must be filed." 38 U.S.C. § 5101(a)(1). Prior regulations implemented this authority by providing that "[a]ny communication or action indicating an intent to apply for benefits . . . may be considered an informal claim." 38 C.F.R. § 3.155(a) (2014). Under prior regulations, if an application form was not previously of record, but was filed

---

[1] We refer to the regulations in effect prior to the effective date of the final rule as "prior" regulations. These regulations are referred to as "current" in the final rule.

within one year of the informal claim, VA would deem the application to have been filed as of the date of the informal claim. 38 C.F.R. § 3.155(a) (2014). If a claim in the form prescribed by the Secretary was already of record, then any informal request for increased compensation or to reopen a previously decided claim would be accepted as the claim, with no requirement to file a standard application form. 38 C.F.R. § 3.155(c) (2014); *see* "Standard Claims and Appeals Forms," 78 Fed. Reg. 65490, 65491-92 (Oct. 31, 2013) (the "proposed rule"). However, this Court's precedent clearly requires that an informal claim be in writing. *See Rodriguez v. West*, 189 F.3d 1351, 1353-54 (Fed. Cir. 1999). Additionally, in order for a communication to be an informal claim, the claimant was required to identify the nature of the disability for which he or she was seeking benefits, such as by describing a body system or symptoms of the disability. *Brokowski v. Shinseki*, 23 Vet. App. 79, 86-87 (2009).

When a VA Agency of Original Jurisdiction (AOJ) (usually a regional office (RO)) makes a decision affecting the payment of benefits or the granting of relief, it provides the claimant with notice of the decision and his or her appellate rights. 38 U.S.C. § 5104; 38 C.F.R. § 3.103(b)(1). Claimants have one year in which to initiate appellate review of a VA decision with the Board of Veterans' Appeals (board) by filing a notice of disagreement (NOD) with the AOJ, which must be in writing. 38 U.S.C. § 7105(a), (b). Under prior regulations, an NOD "must be in

terms which can be reasonably construed as disagreement with [the AOJ decision] and a desire for appellate review." 38 C.F.R. § 20.201 (2014). However, if the AOJ decided multiple issues, the prior regulation required the appellant to specify the issues he or she sought to appeal. *Id.*

In recent years, numerous factors have increased both the volume and complexity of claims for benefits from the VA, which have dramatically increased the operational pressure on the VA disability compensation system. JA44. At the same time, technological advances present opportunities to address the "unprecedented volume of compensation claims" faced by VA. As a result, "VA is aggressively pursuing a comprehensive transformation in order to respond to these challenges." JA45.

II. The Proposed Rule

In proposing changes to its regulations, VA explained its concern that "many features of VA's current claims process . . . contribute to the backlog, or at minimum hamper VA's ability to address the backlog." JA44. In particular, VA noted that "many submissions, including submissions requiring VA to take action, are not received in a standard format." JA44. However, VA also recognized that "efforts to make the process more efficient [should] not also unduly erode the longstanding informal, non-adversarial, pro-claimant nature of the VA system." JA45; *citing Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 323-24;

105 S.Ct. 3180 (1985). Accordingly, VA proposed to "strike an appropriate balance between these interests by increasing the role of standard forms." JA45.

To increase the role of standard forms in the claims process, VA proposed to eliminate the concept of an "informal claim" and replace it with an "incomplete claim." JA46. Under the proposed rule, an incomplete claim could provide a similar effective date "placeholder" as an informal claim if perfected by the filing of a standard application form within one year, but only if received through a claims submission tool within a VA web-based electronic claims application system. JA46, 59. Claims would otherwise be considered received as of the date they were filed on a standard application form. *Id*. VA explained that it was proposing to make the liberal effective date structure previously available for informal claims available only for claims submitted electronically because this structure would "incentivize electronic submissions over paper submissions." JA46.

VA also proposed changes to the rules governing the filing of NODs. VA explained its concern that the "broad and unclear requirements of [prior] § 20.201" were leading to delays in appellate processing. JA49. In particular, an intra-departmental working group found that lengthy NOD "control time" (the time required to recognize a given submission as an NOD and establish it in VA's work queue as an item requiring processing), was largely a product of the non-

standardized way in which NODs were submitted. *Id.* (prior rule "has led to substantial variation in the statements that claimants submit to express disagreement with an AOJ's initial adjudication or an intent to appeal. AOJ personnel are required to read through the enormous volume of documents that VA receives from claimants every day in order to determine whether a statement embedded in any of these documents may 'be reasonably construed' as constituting an NOD."). Further, the group concluded that errors in the identification of NODs "can complicate otherwise straightforward claims" and clog the appellate system with unnecessary remands from the Board, which can extend the ultimate resolution of a case for "years." JA49-50. The working group recommended the creation of a standard NOD form that would dramatically simplify the identification of NODs, as well as provide "minimal identification of the issue regarding which the veteran seeks appellate review." JA50. Pilot testing of the standardized NOD form at the Houston RO revealed substantial improvements in control time. *Id.*

The proposed rule also explained that "[m]andating a standard form, rather than simply encouraging its use, is necessary to ensure the efficiency gains that standard forms make possible will be realized," for two reasons. JA50. First, pilot testing established that many people would continue to submit NODs in a non-standard format if the form were not mandatory. *Id.* Second, "[i]f VA continues to

accept NODs in any format, AOJ personnel would still be required to scour all claimant submissions and engage in the time-intensive interpretive exercise of determining whether a given document could 'be reasonably construed' as an NOD." *Id*.

VA therefore proposed to standardize the beginning of the appellate process by making "the filing of a standard VA form the only way to submit an NOD in cases where the AOJ provides a form to the claimant for the purpose of initiating an appeal." JA50. Because "the standard for what constitutes an NOD applies to all VBA benefit lines, as well as the rest of VA," the proposed rule adopted a flexible triggering mechanism for when a standard form would be required in order to file an NOD. JA51. Whenever VA provides a form identified as being for the purpose of initiating an appeal in connection with its initial decision, VA proposed that an NOD would consist of a completed and timely submitted copy of that form. JA51, 61. However, whenever VA does not provide such a form, the standard for an NOD reflected in the prior rule would govern. *Id*. VA explained this structure would allow for standard forms to be required in appeals of benefits where the volume, complexity, and frequency of appeal call for standardization, without affecting or disrupting the administration of benefits that are infrequently appealed. JA51.

III. Public Comments

VA provided a 60-day public comment period, and received 53 public comments. JA3. Numerous commenters expressed concern with the elimination of an effective date "placeholder" for paper claims in the proposed rule. JA5-6. Commenters also objected to the idea that electronic and paper filings would receive different effective date treatment. JA6. However, some commenters expressed approval of VA's attempt to bring greater clarity and efficiency to the claim system. *See* JA112 ("I am pushing the electronic forms. They get the job done!!"); JA116 ("I think this is long overdue."). *Accord*, JA7, 108, 273.

IV. The Final Rule

VA's final rule made liberalizing changes to the rule as proposed "in order to strike a balance between standardizing, modernizing, and streamlining the claim process and providing veterans, claimants, and their survivors with a process that remains veteran-friendly and informal." JA6. Rather than restrict liberal effective date treatment previously available under the informal claims process to electronic claims, the final rule makes this available to both paper and electronic claims. JA6-11.

The final rule accomplishes this by replacing the informal claims process with the "intent to file" process, which allows claimants to establish an effective date of benefits using one of three standardized inputs. First, new section

3.155(b)(1)(i) provides that saving an electronic application in a claims-submission tool within a VA web-based electronic claims application system prior to submitting the electronic application for actual processing constitutes an intent to file.[2] JA8, 37. Second, new section 3.155(b)(ii) provides that the submission of a written intent to file a claim on a form prescribed by the Secretary for that purpose will be accepted as an intent to file a claim. *Id*. Third, new section 3.155(b)(iii) allows an intent to file a claim may be submitted through oral communication with certain designated VA personnel, "typically in one of VA's call centers." *Id*.[3] So long as a standard application form prescribed by the Secretary is filed within one year of the "intent to file" submission, VA will deem the application to have been filed as of the date the "intent to file" submission was received. JA6-9, 37-38.

The substantive information required in an intent to file is minimal, and indeed *less* extensive than the substantive information required to establish an effective date under the prior informal claim rule. JA7. An intent to file must provide sufficient identifiable or biographical information to identify the claimant, and must identify the general benefit sought (e.g., compensation). JA7, 37. But a

[2] This is essentially the effective date "placeholder" envisioned by the "incomplete claim" concept in the proposed rule. *See* JA59.

[3] While a telephone call or conversation in a public contact center may not on its face seem like a standard form, the final rule explains that designated personnel solicit the necessary data elements and essentially fill out the form on the veteran's behalf. JA8.

claimant does not have to identify medical issues, symptoms, or conditions on which the claim will be based in order to establish an effective date. *Id*.

In addition to an intent to file, new section 3.155(c) also provides that an incomplete application will hold the claimant's effective date of benefits for up to one year. JA9, 38. In the event an intent to file and an incomplete application are received regarding the same claim, the final rule makes clear at new section 3.155(d) that, if a complete application form is ultimately filed, VA will consider it filed as of the date of receipt of whichever was filed first, but in no event more than one year prior to the date of receipt of the complete claim. JA9, 38.

New section 3.155(d)(1) also provides that a complete claim is required for all types of claims. JA11, 38. New section 3.160(a), in turn, defines a complete claim as a "submission of an application form prescribed by the Secretary, whether paper or electronic" that meets certain minimum requirements. JA11-14, 38. A complete claim must provide basic identifying information such as a name, relationship to the veteran (if applicable), sufficient service information for VA to verify the claimed military service, and a signature. A complete claim must identify the benefit sought, and a complete compensation claim must include "[a] description of any symptom(s) or medical conditions on which the benefit is

based."[4] JA12-14, 38; *see* new 38 C.F.R. § 3.160(a)(3)–(a)(4). No further data, contention, or supporting evidence is required. *Id*. The final rule makes clear that the criteria for a complete claim were intentionally modeled on the criteria for a "substantially complete application" in 38 C.F.R. § 3.159(a)(3).

The final rule also revised 38 C.F.R. parts 19 and 20 to incorporate the standardized NOD requirement substantially as proposed, "with minor amendments and clarifications." JA21.

## SUMMARY OF THE ARGUMENT

As to initial claims, the core question in this case is whether VA can require a claimant to fill out a standard application form in order to initiate a claim for benefits. Section 5101 of Title 38, United States Code, answers that question as it provides that "[a] specific claim in the form prescribed by the Secretary . . . must be filed in order for benefits to be paid or furnished to any individual under the laws administered by the Secretary." Accordingly, petitioner's arguments to the contrary reduce to little more than sheer insistence that VA cannot prescribe any requirements for the initiation of a claim for benefits.

Petitioner's contention that the final rule creates an adversarial process is unsupported by any legal authority and indeed is refuted by the express delegation

[4] For nonservice-connected disability or death pension and parents dependency and indemnity compensation claims, a statement of income must be provided. JA38, *see* new 38 C.F.R. § 3.160(a)(5).

in section 5101 quoted above. Nor does VA's "duty to assist" responsibility aid petitioner as the regulation implementing the duty to assist was not amended. This Court's decision in *Sears v. Principi*, 349 F.3d 1326, 1330, 1332 (Fed. Cir. 2003), disposes of petitioner's suggestion that the "pro-claimant" nature of the claims processing system trumps specific statutory provisions. Finally, the premise of petitioner's attack is wrong; the final rule is pro-claimant and non-adversarial.

Petitioner primarily ties its challenge to an argument that the final rule is inconsistent with VA's duty to adjudicate claims reasonably raised by the evidence of record. But the final rule did not alter the legal scope of VA's duty to adjudicate claims reasonably raised by the evidence of record. Petitioner's suggestion that the new regulations depart from prior law, as VA is presently required to adjudicate entitlement to compensation for symptoms or conditions shown in medical records, but never claimed, is in fact, not the law.

The final rule's changes to the regulations governing NODs are also valid. The regulations are consistent with the relevant statute, 38 U.S.C. § 7105(b) and this Court has already held that VA regulations implementing section 7105 receive *Chevron* deference. *Gallegos v. Principi*, 283 F.3d 1309, 1313 (Fed. Cir. 2002). The regulations themselves are not arbitrary and capricious, and reflect a reasonable interpretation of the statute.

The requirement of the regulations to generally identify the decision with which the claimant disagrees is rationally related to the orderly adjudication of veterans' appeals, and in any event is reflected in prior regulations. Petitioner argues that this requirement amounts to requiring specific legal reasoning in order to complete an NOD, but this Court made clear that identifying a specific determination with which the claimant disagrees is not the same thing as requiring legal reasoning.

Petitioners argument that the final rule conflicts with limits on paid attorney representation in 38 U.S.C. § 5904 depends entirely upon the faulty premises that the final rule shifts legal duties and creates an adversarial system and, accordingly, is without merit.

## ARGUMENT

### I. Standard And Scope Of Review

Section 502 of title 38, United States Code, grants this Court exclusive jurisdiction to review certain rulemaking actions by the Secretary of Veterans Affairs. This Court reviews petitions under section 502 in accordance with the standard set forth in the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706. *See Nyeholt v. Sec'y of Veterans Affairs*, 298 F.3d 1350, 1355 (Fed. Cir. 2002) (citing *DAV*, 234 F.3d at 691). This Court will "hold unlawful and set aside agency action" that is arbitrary, capricious, an abuse of discretion, or otherwise not

in accordance with law. 5 U.S.C. § 706(2)(A); *see Mortg. Investors Corp. of Ohio v. Gober*, 220 F.3d 1375, 1378 (Fed. Cir. 2000). "This review is 'highly deferential' to the actions of the agency." *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1372 (Fed. Cir. 2001) (citing *DAV*, 234 F.3d at 691). A regulation is not arbitrary and capricious if there is a “rational connection between the facts found and the choice made.” *NOVA*, 669 F.3d at 1348; *quoting Motor Vehicle Mfrs. Ass’n of the U.S. v. State Farm Mut. Auto. Ins. Co.* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d. 443 (1983).

## II. The Final Rule’s Changes to the Initial Claims Process Are Valid

### A. The Secretary May Require A Standard Application Form

Section 101 of Title 38, United States Code, contains definitions applicable to that Title. However, neither section 101, nor any other statute, defines the term “claim” for veterans’ benefits purposes. Congress made clear that it intended the Secretary to fill this statutory gap by requiring claimants to file “a specific claim in the form prescribed by the Secretary.” 38 U.S.C. § 5101(a)(1). The final rule addresses what kind of submission qualifies as “a specific claim in the form prescribed by the Secretary[.]”

Under prior regulations, an informal claim could be initiated through non-standard narrative written submissions. In some scenarios, these submissions would have to be perfected by the filing of a standard application form. *See* 38

C.F.R. § 3.155(a) (2014). In others, these non-standard submissions were themselves treated as claims, without any further requirement to submit a standard application form. *See* 38 C.F.R. § 3.155(c) (2014). But in either event, VA's regulations treated these submissions as claims submitted "in the form prescribed by the Secretary."

The final rule provides that non-standard narrative submissions no longer constitute "a specific claim in the form prescribed by the Secretary." Rather, in order to meet this statutory requirement, a claimant must submit one of the following standardized inputs: 1) a standard application form; 2) an intent to file a claim through one of three standard formats that is later perfected within one year by the filing of a standard application form; or 3) an incomplete application that is perfected within one year by the filing of a complete standard application form. JA36-38; *see* new 38 C.F.R. § 3.1(p), 3.155, 3.160. While these changes allow claimants multiple ways to hold their effective date of benefits prior to the date that they actually file the completed standard application form, the effect is to require all claims to begin on standard forms.

These changes are well within the Secretary's explicitly delegated rulemaking authority. Applicable statutes and this Court's precedents make clear that the Secretary has authority to designate how claims for VA benefits must originate, and that this authority necessarily implies that there may be substantive

consequences in the event that a claimant does not file "a specific claim in the form prescribed by the Secretary[.]" 38 U.S.C. § 5101(a)(1).

The Secretary has authority to specify how a claimant must initiate a claim for benefits. Section 501(a)(2) confers authority to "prescribe all rules and regulations" governing "the forms of application by claimants" under the laws administered by VA. Furthermore, the plain language of the statute specifically dealing with the establishment of claims is consistent with this broad delegation of authority because it makes clear that the Secretary is vested with considerable discretion in determining how claimants must initiate claims for benefits. 38 U.S.C. § 5101(a)(1) ("[a] *specific* claim in the form prescribed by the Secretary . . . *must* be filed in order for benefits to be paid or furnished to any individual under the laws administered by the Secretary.") (emphasis added).

Taken together, sections 501(a)(2) and section 5101(a)(1) do more than permit the Secretary to design application forms, or require that they be used. Rather, they permit the Secretary to designate what information must be provided to initiate a claim, and in what format. *Mansfield v. Peake*, 525 F.3d 1312, 1317 (Fed. Cir. 2008) ("Congress has provided the VA with authority to establish the requirements for 'claims' for veterans' benefits."). Congress contemplated the possibility that there would be monetary implications for a claimant who does not file a "specific claim in the form prescribed by the Secretary" because failure to do

so would mean that no benefits could be "paid or furnished." 38 U.S.C. § 5101(a)(1). Regulations promulgated pursuant to section 501(a)(2) that require all claims to originate on standard VA forms are therefore well within VA's delegated statutory authority, and are consistent with the applicable statute.

The regulations are also consistent with this Court's precedent, which has recognized VA's authority and obligation to define the contours of acceptable applications. In *Mansfield*, this Court made clear that section 5101(a) provides VA with authority to establish substantive requirements that must be met in order for a given submission to constitute a claim. *See Id.* (rule allowing "any statement" to initiate a claim for benefits under 38 U.S.C. § 1151, but requiring that the statement show "an intent" to file such a claim was promulgated "in accordance with" section 5101(a)).

Similarly, this Court has held that the failure to file a specific claim in the form prescribed by the Secretary means that a veteran has not filed a claim, with the effect that no benefits can be paid. *Fleshman v. West*, 138 F.3d 1429, 1431-32 (Fed. Cir. 1998). In *Fleshman*, a veteran sought compensation for a back disability, but "did not fill out the second page of the two-page form." *Id*. at 1430. After entitlement was later established, this Court affirmed the Veterans Court's denial of an earlier effective date predicated on the incomplete application:

> *In order to receive benefits* from [VA], an applicant must file a claim 'in the form prescribed by the Secretary.' . . . Mr. Fleshman contends

> the statute and regulation merely require a person claiming veterans' benefits to file a claim on an application form provided by the Secretary. We disagree. That result would be compelled only if the provision used language such as 'on the form' or 'using the form.' . . . We agree with the government's contention that section 5101(a) requires applicants to submit a claim in a particular format, containing specified information, and signed by the claimant, as called for by the blocks on the application form.

*Id*. at 1431-32 (emphasis added).[5] In *Fleshman*, this Court recognized not only that a specific claim in the form prescribed by the Secretary is required before benefits may be paid, but recognized that the Secretary can designate substantive information that, if sufficiently fundamental to the claim process, must be provided before this standard is met.[6] *Id.*

Similarly, this Court has held that section 5101(a) is a provision of "general applicability" and requires that a claim must be filed for "any type of benefit to accrue or be paid." *See Jones v. West*, 136 F.3d 1296, 1299 (Fed. Cir. 1998). In *Jones*, this Court held that even when certain terms of 38 U.S.C. § 5121(a) appeared to condition entitlement only on the presence of evidence in the file, section 5101(a) imposed a "restriction" that "limited" section 5121(a) by requiring a specific claim be filed. *Id*. at 1298-1300.

---

[5] *Amici* Angela K. Drake et. al. cite section 5101 once, for the proposition that it only "empowers the Secretary to create forms." Brief of Amici at 2. *Fleshman* explicitly rejects such a limited view of section 5101.

[6] We note that while a submission such as Mr. Fleshman's would no longer constitute an informal claim under the final rule, the incomplete application itself would hold his effective date for up to one year pursuant to new 38 C.F.R. § 3.155(c). JA38.

Indeed, no statute requires VA to accept "any communication or action" as a claim. VA's policy of accepting "any communication or action" as the "specific claim in the form prescribed by the Secretary" provided it met the requirements of prior 38 C.F.R. § 3.155 was only ever a feature of VA's regulations.

Accordingly, Congress has "directly spoken to the precise question at issue" by providing that the Secretary may prescribe rules concerning the "forms of application," and requiring in statute that a claimant *must* file "a specific claim in the form prescribed by the Secretary" before receiving any benefits. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 104 S.Ct. 2778 (1984); 38 U.S.C. §§ 501(a)(2), 5101(a)(1). Petitioner cites no binding authority meaningfully contradicting the above analysis, and we are aware of none. Indeed, petitioner does not even cite or discuss section 5101(a) except to quote the final rule. Instead, petitioner confines its analysis to statutes and principles that are irrelevant to the question of whether the Secretary may require that claims originate on standard application forms. Therefore, this portion of the petition should be denied.

B. The Final Rule Is Not Adversarial

Petitioner first insists that the final rule improperly converts the veterans benefits system into an adversarial process, Pet. Br. 14-18, but provides no support for its premise that the rule is actually adversarial or contrary to law. In fact, this

argument is based on little more than an inference, rather than governing legal authority.

Petitioner points primarily to the fact that Congress has enacted laws specifically providing particular legal duties for VA, or claimant-friendly procedures, at various phases of the claims process, i.e., 38 U.S.C. § 5103A (duty to assist), and kept others intact, *i.e.*, 38 U.S.C. § 7105 (NOD, SOC, substantive appeal), despite awareness of lengthy claims processing periods. *See* Pet. Br. at 15, 17. Petitioner argues, therefore, that any regulation establishing submission requirements is not pro-claimant and therefore contravenes Congressional intent. There are a number of problems with this argument.

First, none of the authorities or features of the claim system that petitioner discusses bears upon the legal requirements for establishing a claim for VA benefits. As already established, sections 501(a)(2) and 5101(a)(1) together provide the Secretary with authority to determine what kind of submission constitutes a "specific claim in the form prescribed by the Secretary." The mere existence of the duty to assist, generous filing deadlines, and an open evidentiary record shed no light on the legal authorities and requirements applicable to initiating claims for VA benefits. Nor does petitioner identify any conflict or incompatibility between the final rule and the authorities discussed beyond the general assertion that the final rule is not pro-claimant.

Second, to the extent petitioner argues that the final rule is contrary to VA's duty to assist veterans in gathering evidence in support of the claim as codified at section 5103A, the argument plainly lacks merit. Pet. Br. at 15; *see also* Pet. Br. at 19 (*citing Henderson v. Shinseki*, 131 S.Ct. 1197, 1200 (2011)). The regulation implementing the duty to assist was not altered in any way. *See* 38 C.F.R. § 3.159. Further, the requirements for a complete claim under new 38 C.F.R. § 3.160 were intentionally modeled upon the requirements for a "substantially complete application" in 38 C.F.R. § 3.159, which triggers VA's duty to provide assistance by developing evidence in support for the veteran's claim for benefits. JA12-13, 38; *compare* 38 C.F.R. §§ 3.159(a)(3), (c), 3.160(a). In other words, the level of substantive information required from a claimant in order to trigger VA's duty to assist under the final rule is *the same* as it was before the final rule went into effect. This Court has already determined that VA's definition of "substantially complete application" at section 3.159(a)(3) is "not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law." *See PVA*, 345 F.3d at 1360.

Third, even if petitioner is correct in its insistence that the final rule is not pro-claimant, this would not be the end of the analysis. Petitioner seems to believe that if it can demonstrate that the final rule is not pro-claimant, the Court must invalidate the entire rule as beyond the Secretary's authority. *See* Pet. Br. at 17. But that is not the law. Rather, the question is whether Congress has "directly

spoken to the *precise* question at issue," not whether a regulation contravenes a general Congressional policy gleaned from multiple sources. *Chevron*, 467 U.S. at 842-43 (emphasis added). If Congress has not addressed the precise question at issue, the Court asks whether the regulation is based on a "permissible" construction of the applicable statute. *Id*. VA's regulations must be reasonable, and obviously must be consistent with the "statutory framework." *Sears v.* Principi, 349 F.3d 1326, 1330 (Fed. Cir. 2003). Consistency with the "statutory framework" plainly cannot be reduced to the single-factor test of whether the regulation is uniformly "pro-claimant." The "statutory framework" is established primarily by the actual content and structure of the statutes themselves, not solely by broad statements of policies reflected in the statutory scheme. As relevant to this rule, the statutory framework expressly authorizes VA to establish requirements for applications and other matters. *See* 38 U.S.C. §§ 501, 5101(a). Congress unquestionably understood and intended that such requirements necessarily may impose some degree of responsibility on claimants. *E.g.*, 38 U.S.C. § 5107(a) ("a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary."). Petitioner articulates no basis whatsoever to conclude that the regulation is not based on a permissible construction of section 5101(a)(1). Nor could it, since the regulation is consistent with the plain language of section 5101(a)(1) and this Court's holdings. *See*

*Fleshman*, 138 F.3d at 1431-32. And again, petitioner does not identify any conflict or incongruity between the final rule and the authorities it discusses, because there is none. Pet. Br. at 14-18.

In particular, this Court has previously suggested that an argument based on the general pro-claimant nature of the veterans' benefit system does not qualify as a *Chevron* step one argument against a VA regulation. This Court has analyzed such arguments at *Chevron* step two and concluded that "[w]here, as here, a statute is ambiguous and the administering agency has issued a reasonable gap-filling or ambiguity-resolving regulation, we must uphold that regulation." *Sears*, 349 F.3d at 1332. Similarly, in *Sears*, the Court cautioned, "we must take care not to invalidate otherwise reasonable agency regulations simply because they do not provide for a pro-claimant outcome in every imaginable case." *Id*. at 1331-32; *citing Disabled American Veterans*, 234 F.3d 682, 692 (Fed. Cir. 2000) ("generous spirit" of veterans benefits laws does not override "clear meaning of a particular provision.") (internal quotations and citations omitted). The contrary approach of allowing the generally pro-claimant nature of the veterans benefits statutes to override the clear content of specific provisions, such as 38 U.S.C. § 5101(a)(1), would lead to ad hoc judicial rewriting of the United States Code on a case by case basis. Nor would such an argument, if correct, establish that the final rule is

arbitrary and capricious or lacking in any rational basis – rules that do not provide for a pro-claimant outcome in every case can clearly still have a rational basis.

Fourth and most fundamental, petitioner is simply wrong. No matter what analytical structure is applied, the final rule is pro-claimant and non-adversarial. VA has not "overthrown" the pro-claimant nature of the veterans' benefits system. *See* Pet. Br. 16. Indeed, the final rule is *more claimant friendly* than the informal claim rule that preceded it in two crucial ways. First, an informal claim had to be received in writing. *Rodriguez*, 189 F.3d at 1353-54. But under the final rule, an intent to file a claim may be submitted with as little as a phone call. JA37. Second, the informal claim regulation required the claimant to "identify the benefit sought." 38 C.F.R. § 3.155(a) (2014). Case law is clear that this meant a veteran was required to specify the nature of the disability for which he or she was seeking benefits in order to hold an effective date of benefits through an informal claim. *Brokowski*, 23 Vet. App. at 86-87 ("[t]he requirement to identify the benefit sought means that a claimant must describe the nature of the disability for which he is seeking benefits."). In the final rule, VA made clear that "[a]n intent to file a claim need not contain this level of specificity." JA7. "An intent to file a claim must identify the general benefit (e.g., compensation, pension), but need not identify the specific benefit claimed or any medical condition(s) on which the claim is based." JA37; 38 C.F.R. § 3.155(b)(2). VA adopted this "substantive liberalization of the

information necessary to establish an effective date" because it will "align claimant incentives with the interests of efficient and accurate claims processing." JA7.

To perfect an "intent to file" into a complete claim, veterans are not required to specify legal theories of entitlement, specific medical diagnoses, or meet any other technical pleading requirement. Rather, in terms of identifying the basis for the claim, they are only required to provide "symptom(s) or medical condition(s) on which the benefit is based" on the correct form (which VA is required to send them) within one year in order to receive benefits effective as of the date of the intent to file a claim. JA37-38. And VA will broadly and sympathetically construe the scope of the claim, to include disabilities reasonably raised by the evidence of record that are in any way within the reasonable scope of the claimed symptoms or conditions. *Id*.

It is also worth noting what the final rule does not (and in some cases, could not) change. For example, claimants retain the right for VA to assist them in developing evidence and information necessary to substantiate their claims. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159. VA must consider "all information and lay and medical evidence of record" when making a decision, and whenever there is an approximate balance of positive and negative evidence on any issue relevant to the claimant's entitlement, must resolve any reasonable doubt in the veteran's favor. 38 U.S.C. § 5107(b); JA38; *see* 38 C.F.R. § 3.155(d)(2). The appellate system is

generally administered on an open-record basis, and new evidence submitted following VA's initial decision that leads to a grant of benefits generally relates back to the effective date of the original claim. 38 C.F.R. §§ 3.156(b), 19.37, 20.1304. The fact that this process begins by filing a standard application form, or a placeholder communication later perfected by the filing of a standard application form, does not convert the process into an adversarial one.

At bottom, the only change in the final rule applicable to the initial claim process is the requirement that the pro-claimant process begin with the filing of a standard application form, or placeholder communication ultimately perfected with the filing of a standard application form. Not only is any burden associated with submitting an application form *de minimis* at most, this Court held in *Fleshman* that section 5101(a) gives the Secretary authority to require not only that a particular application form be used, but that certain substantive information requirements be fulfilled before a submission becomes a claim. The bare assertion that the requirement to fill out a form is not pro-claimant does not overcome this authority.

### C. VA's Claim Adjudication Responsibilities Have Not Been Altered By The Regulation

Petitioner's first specific contention relates to new 38 C.F.R. § 3.160(a)(4). Pet. Br. at 19. Paragraph (a)(4) requires only that a veteran provide a description of "any symptom(s) or medical condition(s) on which the benefit is based[.]" VA

found that the sheer volume of claims not initiated on standard forms was hampering its ability to timely and efficiently process veterans' claims for benefits because such submissions "increase[] time spent determining whether a claim has been filed, identifying the benefit claimed, sending letters to the claimant and awaiting a response[.]" JA44-45. At the same time, VA was cognizant of the need to maintain the pro-claimant, non-adversarial character of the veterans' benefits system. JA45. Accordingly, VA determined that it would broadly and sympathetically construe the scope of all claims for benefits, but still require a basic identification on a standard form of the substance of the claim being presented for adjudication. JA14-15. In terms of the specific amount of substantive information required, VA chose a standard already reflected in its regulations governing the activation of the duty to assist. *Compare* 38 C.F.R. §§ 3.159(a)(3) with new 38 C.F.R. § 3.160(a)(4).

Petitioner insists that new 38 C.F.R. § 3.160(a)(4) is arbitrary and capricious because VA has upended the veterans benefits system by renouncing its duty to adjudicate claims reasonably raised by the evidence of record. But the final rule is explicitly to the contrary. JA14-16, 38. The final rule did not change the amount of issue identification that was legally required before the rule went into effect; the only change in this area is the requirement that the claim begin on a standard

application form. The final rule does not alter the substantive scope of VA's obligations in developing and adjudicating a claim.

Just as VA's regulations implementing the duty to assist require claimants to identify "the benefit claimed and any medical condition(s) on which it is based" before VA's duty to assist is triggered, the final rule requires claimants to provide "[a] description of any symptom(s) or medical condition(s) on which the benefit is based" in the event the designated form so requires in order for a submission to be a complete claim. JA38; *see* 38 C.F.R. § 3.159(a)(3). In response to comments expressing concern that a rule requiring all claims to originate on standard forms implied that VA would no longer grant benefits based on claims reasonably raised by the evidence of record, VA explained that this practice would continue:

> This rule does not alter VA's general practice of identifying and adjudicating issues and claims that logically relate to and arise in connection with a claim pending before VA. Although the rule requires claimants to specify the symptoms or conditions on which their claims are based and the benefits they seek, it generally would not preclude VA from identifying, addressing, and adjudicating related matters that are reasonably raised by the evidence of record which the claimant may not have anticipated or claimed, but which logically should be addressed in relation to the claim filed. Rather, such matters generally may be viewed as being within the scope of the claim filed, as sympathetically interpreted in light of the record.

JA14. See JA15-16; 38 C.F.R. § 3.155(d)(2).

VA further explained that this principle implied that whenever it receives a claim, a number of analyses would be triggered regardless of whether or not the

claimant specifically raised them. First, VA would broadly construe the scope of all symptoms or conditions identified on the application form. JA14-15. For example, a claim for the "right knee" can be sympathetically read to encompass claims for arthritis, ankyloses of the knee, knee "locking," etc., or a claim for "heart condition" would lead VA to consider potential entitlement to both endocarditis and rheumatic heart disease, depending on the evidence of record. *Id*. Second, VA would also consider possible entitlement to benefits based on secondary service connection or service connection based on aggravation of an already service-connected disability. JA15, 38. Third, VA would consider entitlement to special ratings such as total disability based on individual unemployability (TDIU). *Id*. Fourth, VA would consider potential entitlement to ancillary benefits that arise as a result of the adjudication decision, such as adaptive automobile allowance. *Id*. Fifth, VA would be required to identify and adjudicate "any other issues that are reasonably within the scope of the issues enumerated in the complete claim." *Id*.

Therefore, under the final rule, only an issue that has no factual, medical, or causal relationship to any of the symptoms or conditions identified on the standard form would not be considered part of the claim. In other words, only an issue flatly unrelated to the claim presented to VA for consideration would be outside

the scope of the claim. This was the state of the law before the final rule, and the rule is accordingly not the renunciation that petitioner insists.

1. 38 U.S.C. § 5107(b) Is Not To The Contrary

In arguing that VA is required to identify and adjudicate issues flatly unrelated to those presented to it for adjudication, petitioner points to 38 U.S.C. § 5107(b), which provides in pertinent part that VA must "consider all information and lay and medical evidence of record in a case before the Secretary." Nothing in the final rule purports to alter VA's statutory obligation to consider all evidence of record. 38 C.F.R. § 3.103(a), which provides that VA must "render a decision which grants every benefit that can be supported in law while protecting the interests of the Government" was not amended. The final rule requires VA to consider "all lay and medical evidence of record in order to adjudicate entitlement to benefits for the claimed condition as well as entitlement to any additional benefits for complications of the claimed condition[.]" JA38, 38 C.F.R. § 3.155(d)(2). The question is not whether VA will consider the entire record, but whether a piece of evidence relating to a symptom that was not presented to VA for adjudication, and bears no factual, causal, medical or other relationship to the issues that *were* presented for adjudication, *itself constitutes a claim for benefits* for that symptom or condition. Section 5107(b) simply does not address this question. Further, it is a fundamental rule of statutory construction that the meaning and

effect of statutes is to be determined with reference to other statutes. *Terry v. Principi*, 340 F.3d 1378, 1385 (Fed. Cir. 2003). Section 5107(b) must therefore be read in concert with the explicit terms of section 5101(a)(1), not read so broadly as to contradict it.

2. *Cushman* Is Not To The Contrary

Petitioners also point to this Court's decision in *Cushman*, arguing that requiring a veteran to identify symptoms or conditions on a standard application form constitutes a violation of due process. Pet. Br. 20-21, 23; *see Cushman v. Shinseki*, 576 F.3d 1290, 1298-99 (Fed. Cir. 2009). Simply put, *Cushman* held that applications for benefits must be decided consonant with due process and fundamental fairness. *Id*. at 1298, 1302. Of course, nothing in *Cushman*, which dealt with an improperly altered medical record, even colorably addresses requirements for the initiation of a claim for benefits. This is unsurprising, because Mr. Cushman only pursued compensation for one disability (a back disability) and there was no dispute about when that claim was duly filed. *Id*. at 1292.

Certainly nothing in *Cushman* suggests that the due process clause precludes the establishment of procedural and substantive requirements that must be met before government benefits may be paid. In fact, *Cushman* itself recognizes that statutes and regulations may impose requirements that must be met before entitlement to benefits is established. *Id*. at 1298 (entitlement to disability benefits

arises "upon a showing that [the veteran] meets the eligibility requirements set forth in governing statutes and regulations."). As section 5101(a)(1) makes clear, one of the most fundamental of those requirements is that a veteran must file "a specific claim in the form prescribed by the Secretary" in order to receive benefits.

*Cushman* recognized that "[t]he procedural framework for adjudicating claims must be sufficient for the large majority of a group of claims in order to be constitutionally adequate for all." 576 F.3d at 1299-1300; *citing Walters*, 473 U.S. at 330. Petitioner relies on the unremarkable statement that "[a] fundamentally fair adjudication within that framework, however, is constitutionally required in all cases, and not just in the large majority." This case deals with the validity of a regulation, not an individual veteran's claim. But more fundamentally, the requirement to provide minimal identification of symptoms or conditions at the root of a disability claim, such as "knee," is in no way incompatible with fundamental fairness. Nothing in *Cushman*, or any other authority of which we are aware, establishes that this is the case.

Further, even if requiring a symptom or condition to be identified on a standard application form could be viewed to create some risk of "erroneous deprivation" of benefits, to the extent that even a clearly eligible claimant cannot receive benefits absent a proper claim, *Walters* makes clear that procedural structures do not need to be "so comprehensive as to preclude any possibility of

error" in order to be consonant with fundamental fairness. *Walters*, 473 U.S. at 320 (*quoting Mackey v. Montrym*, 443 U.S. 1, 13, S.Ct. 2612, 2618, 61 L.Ed.2d 321 (1979)). In other words, the possibility that some people who might otherwise be found entitled to benefits will not receive them because they refuse to fill out a form does not present a constitutional issue.

Petitioner also points to the statement in *Cushman* that "[a]pplications for benefits cannot be denied unless the [VA] factually determines that the applicant does not suffer from a disability originating from service." Pet. Br. 20-21, *Cushman*, 576 F.3d at 1298-99; *citing* 38 U.S.C. § 1110. This statement merely frames the substantive inquiry at the heart of a compensation claim. For authority, this statement relies only on section 1110, which creates basic entitlement to wartime disability compensation, and says nothing about the process for determining whether disabilities are compensable. This statement does not imply that the process for determining whether the requirements of the statute are met cannot depend, in part, upon the initiation of a claim for disability benefits through the filing of a standard application form, and that the initiation of a claim cannot frame the scope of the relevant evidentiary inquiry. Neither this statement from *Cushman* or section 1110 address such a question, but of course section 5101(a)(1) does.

3. The *Hodge / Roberson* Line Of Cases Is Not To The Contrary

In arguing that the final rule constitutes a sea change, petitioner primarily relies on cases citing the legislative history of the VJRA for the proposition that VA must "fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." Pet. Br. 19-22; *see* H.R. Rep. No. 100-963 at *13 (1988) *reprinted in* 1988 U.S.C.C.A.N. 5782, 5794-95; *see Hodge v. West*, 155 F.3d 1356, 1362-63 (Fed. Cir. 1998); *see also Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001); *Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004). Petitioner construes this statement as establishing that VA must consider, and treat as freestanding "claims," symptoms and conditions that were never presented to VA for adjudication. That is not the law.

First, this statement from legislative history still requires a "claim." The very house report that formed the genesis of this line of cases expresses the understanding that the VA adjudicative process begins "[a]fter a claim is filed" which then causes the agency to help the claimant "compile evidence to support his or her claim." H.R. Rep. No. 100-963 at *13. This statement does not define what does and does not constitute a "claim," and does not unambiguously require VA to identify and adjudicate issues and claims that are unrelated to the claim(s) presented to VA on a standard application form. *See* JA14-15. Rather, it

recognizes that the scope of required evidence gathering is informed by the "claim" presented to VA for adjudication. H.R. Rep. No. 100-963 at *13.

This reasoning is consistent with the statutory structure, and regulations in place before the final rule was enacted. The statutory structure requires a "specific claim" in order to support a benefit award, and to establish a date on which entitlement to an award may be effective. 38 U.S.C. §§ 5101(a)(1), 5110(a). 38 C.F.R. § 3.103(a) specifies that every claimant has the right to written notice of the decision made regarding "his or her claim" and that VA will assist in developing "the facts pertinent to the claim." Those provisions contemplate adjudicating matters that are reasonably within the scope of the claim filed by the claimant, but do not create a duty to adjudicate matters unrelated to the claim filed.

Similarly, the idea that evidence of a symptom that is factually, medically, and causally unrelated to the claim presented to VA itself constitutes a claim for benefits is not just incompatible with new section 3.160(a)(4), but with section 3.159(a)(3). As the final rule explained, the requirement to specify the "symptom(s) or medical condition(s) on which the benefit is based" in section 3.160(a)(4) was meant to be satisfied whenever the requirement to specify "the benefit claim and any medical condition(s) on which it is based" in section 3.159(a)(3) is satisfied. This information is a central requirement for the submission of a "substantially complete application." If the requirement in new

section 3.160(a)(4) to specify the symptom or condition on which the benefit is based is inconsistent with the VJRA legislative history and accordingly with *Hodge*, there is no readily apparent reason why section 3.159(a)(3) would not suffer the same flaw. Yet this Court has explicitly recognized that the duty to assist is not triggered until a "substantially complete application" is filed, and that because 38 U.S.C. §§ 5103 and 5103A did not define this term, it was reasonable for VA to define it "so it could determine whether the duty has been triggered." *See PVA*, 345 F.3d at 1360. Accordingly, this Court explicitly recognized that a definition was necessary for the orderly operation of the duty to assist and that the definition VA chose is "not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law." *Id*.[7]

In any event, the implicit recognition in *PVA* that the filing of a claim is antecedent to the activation of the duties to notify and assist is consonant with this Court's precedents more specifically dealing with the origination of claims, such as *Fleshman* and *Mansfield*. The statement in the VJRA legislative history and *Hodge* and its progeny does not establish that the duty to develop the veteran's

[7] Congress later amended section 5103 by striking "[u]pon receipt of a complete or substantially complete application in." HONORING AMERICA'S VETERANS AND CARING FOR CAMP LEJEUNE FAMILIES ACT OF 2012, Pub. L. 112-154 § 504, 126 Stat. *1165, at *1191 (Aug. 6, 2012). The need to define an undefined statutory term ("claim") is as salient as in *PVA*. Further, both statutory language and legislative history establish Congress' intent to increase the role of standard forms, not to untether the duties to notify and assist from the filing of a claim. H.R. Rep. 112-241 at *9 (Oct 6, 2011).

claim to its optimum transcends the antecedent requirement that there must first be a claim.

*Roberson* does not establish otherwise. In *Roberson*, this Court held that when a veteran "submits evidence of a medical disability and makes a claim for the highest rating possible, and additionally submits evidence of unemployability, the 'identify the benefit sought' requirement of [prior] 3.155(a) is met and the VA must consider TDIU." *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001). This Court explained that this was because the duty to develop a veteran's claim to its optimum required VA to "determine all potential claims raised by the evidence, applying all relevant laws and regulations, regardless of whether the claim is specifically labeled as a claim for TDIU."

The final rule is consistent with *Roberson*, for several reasons. First of all, if this Court applied the final rule to the facts of *Roberson*, the result would be the same. The proposed rule explained that "it is VA's intent that a request for an increase accompanied by evidence of unemployability continue to constitute a claim for TDIU, but the claim for increase itself must be filed on a standard form. VA believes this would simplify and clarify the processing of TDIU claims, without affecting the substantive law governing TDIU." JA49. Similarly, the final rule clearly requires VA to consider entitlement to TDIU whenever that issue is potentially raised by the evidence of record. JA15-16, 38. This is consistent with

VA's explanation that TDIU, in and of itself, "is not a 'claim' but a rating that is provided in light of an individual's disabilities." JA15; *citing Rice v. Shinseki*, 22 Vet. App. 447, 452-54 (2009) ("[o]ur cases have been less than precise by simply adopting the term 'claim for TDIU'"); *accord Comer v. Peake*, 552 F.3d 1362, 1367 (Fed. Cir. 2009) ("under *Roberson*, a claim to TDIU benefits is not a free-standing claim that must be pled with specificity; it is implicitly raised whenever a pro se veteran, who presents cogent evidence of unemployability, seeks to obtain a higher disability rating."). Under the final rule, VA must consider TDIU whenever it is raised by the evidence of record regardless of whether the claimant specifically requests it, just as it must consider a numerical disability rating such as 10 percent or 40 percent.

Second, nothing in *Roberson* or its progeny establishes that symptoms or conditions totally unrelated to the claim presented to VA for processing and adjudication constitute separate claims. Contrary to petitioner's assertion, *Roberson* does not establish that a claim for a knee disability must be treated as a claim for a hand disability when only the knee is identified by the claimant and there is no reasonable relationship between the two. In fact, the claimant in *Roberson* had filed a specific claim for psychiatric problems. 251 F.3d at 1380-81. The issue was not whether that claim should have been construed to encompass entirely separate medical conditions, but whether VA was obligated to consider a

potential rating of TDIU for the disability identified when the evidence of record established potential entitlement for such a rating.

Third, *Roberson* does not directly deal with the requirements applicable to initiation of a claim for benefits. Reading *Roberson* so broadly as to overcome any substantive or procedural requirements applicable to the initiation of a claim for benefits would have the effect of functionally overruling section 5101(a), which *Roberson* does not discuss or even cite. Such a reading would also imply that *Roberson* had the effect of silently overruling *Fleshman*, and would create at minimum a significant tension with *Mansfield* and *Jones*. *Fleshman*, 138 F.3d at 1431-32; *Mansfield*, 525 F.3d at 1317; *Jones*, 136 F.3d at 1299-1300. Despite the breadth of the statement, "all potential claims raised by the evidence," it is clear the *Roberson* Court did not understand itself to be articulating a rule that would categorically trump every other source of law in Title 38. Rather, the *Roberson* Court understood that the questions of whether a claim has been filed and what ratings a veteran might be eligible for are informed by the application of "all relevant laws and regulations." *Roberson*, 251 F.3d at 1384. *Szemraj* is consistent with this view, and indeed provides support for the idea that the liberal construction of claims does not operate independently of the veteran identifying, at a high level of generality, an issue for VA to develop, consider, and adjudicate. *See Szemraj*, 357 F.3d at 1376 ("*Roberson* does not change the legal standard for

determining whether the VA correctly applied its regulations to a veteran's claims. All *Roberson* requires is that the VA give a sympathetic reading *to the veteran's filings* to determine all claims for recovery supported by a liberal construction *of those allegations*.") (emphasis added).

Fourth, while petitioner suggests that *Roberson* establishes that VA cannot require a veteran to specify, at a general level, the symptoms or conditions for which he is seeking compensation benefits, a wealth of case law establishing precisely the opposite makes clear *Roberson* cannot bear such weight. In *MacPhee v. Nicholson*, 459 F.3d 1323, 1326 (Fed. Cir. 2006), this Court considered whether medical records under (prior) 38 C.F.R. § 3.157(b)(1) effectively constitute informal claims. *Id*. at 1326. The appellant in *MacPhee* argued that medical records themselves can be an informal claim without first claiming service connection and benefits for the disability in question. *Id*. This Court determined that position was contrary to the plain language of the regulation, which made clear that a medical examination report only constituted an informal claim for an increase when service connection had already been established for that disability. *Id*. at 1326-27.

If medical evidence itself constitutes a freestanding claim for benefits for any disability potentially disclosed by the record, the position now urged by petitioner, then the *MacPhee* holding imposing a condition upon when medical

records may constitute claims would have been contrary to law. Indeed, in *MacPhee*, the Court does not cite *Hodge* or *Roberson*, notwithstanding that Mr. MacPhee had argued that "VA must give a sympathetic reading to a veteran's claim by determining all potential claims raised by the evidence[.]" *MacPhee*, 459 F.3d at 1327-28. *MacPhee* stands for the proposition that statutes and regulations specifically governing what kind of submission does and does not constitute a claim are not invalidated by VA's general duty to determine all potential claims, and construe a veteran's claims sympathetically. *Id*. VA's general duty to sympathetically construe a Veteran's claim and consider all evidence of record does not, in and of itself, *create claims*.[8] *Accord*, *Criswell v. Nicholson*, 20 Vet. App. 501, 503-504 (2006) ("condition reflected in contemporaneous medical records when a separate claim was filed did not constitute a claim because mere existence of medical records generally cannot be construed as an informal claim; rather, there must be some intent by the claimant to apply for a benefit."); *Clemons v. Shinseki*, 23 Vet. App. 1, 7 (2009) ("[A] different result is reached when the evidence supports the service connection of a disability, but there is no indication

[8] In *MacPhee*, the Court quoted with approval *Brannon v. West*, 12 Vet. App. 32, 33 (1998), in which the Veterans Court held that the veteran had not raised a claim for the psychiatric condition because "the mere presence of medical evidence does not establish an intent on the part of the veteran to seek service connection for the psychiatric condition." *Id*. at 35. "The Board is not required to conjure up issues that were not raised by the [veteran]." *Id*. Petitioner's assertion that VA has a duty to adjudicate a claim not brought, Pet. Br. 23 (diabetes hypothetical), is wrong.

the claimant was seeking benefits for that disability or the symptoms he was experiencing that are associated with that disability.").

While not directly on point, this Court's decision in *Jones* is strongly in accord. *Jones*, 136 F.3d at 1299-1300. In *Jones*, the Veterans Court found a valid claim based not upon an existing claim, but evidence in the claims file. This Court reversed, holding that section 5121(a) had to be read in conjunction with section 5101(a), which "is a clause of general applicability and mandates that a claim must be filed in order for any type of benefit to accrue or be paid." *Jones*, 136 F.3d at 1299. This Court explicitly rejected the Veterans Court's view that requiring a claim would "impose a restriction on the statutory provision that accrued benefits may be based on evidence in the file at the date of the veteran's death." *Id*. at 1299-1300 (internal quotation marks omitted). In a footnote, the Court made clear that it reached this result without resort to *Chevron* deference, "given the plain meaning of the statutory provisions at issue." *Id*. at 1299-1300, n2.

4. <u>The Agency Is Entitled To *Chevron* Deference</u>

As the discussion above makes clear, the final rule does not alter the substantive scope of VA's duty to sympathetically construe a veteran's claim, and consider all issues reasonably raised by the evidence of record. The only change is that a claim triggering these duties must begin on a standard application form.

However, in the event this Court disagrees, it should nevertheless deny the petition.

The Supreme Court has made clear that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 982, 125 S.Ct. 2688, 162 L.Ed.2d. 820 (2005); *see also Eurodif S.A. v. U.S.*, 423 F.3d 1275, 1276-77 (Fed. Cir. 2005). "Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction." 545 U.S. at 982-83. *Hodge* and *Roberson* do not hold that any statute unambiguously requires VA to consider and adjudicate evidence of symptoms totally unrelated to the claim presented to VA. *Hodge*, 155 F.3d at 1362-63; *Roberson*, 251 F.3d at 1384. As demonstrated above, *Hodge* and *Roberson* do not construe the text of any particular statute, but find their genesis in a statement from legislative history summarizing the general character of the system. On its face, *Roberson* is not *Chevron* step one authority, but this Court's holding in *Fleshman* and subsequent holdings in *Mansfield* and *MacPhee* even more clearly demonstrate that *Roberson* does not control the question of what

constitutes a "claim" at *Chevron* step one. *Fleshman*, 138 F.3d at 1431-32; *Mansfield*, 525 F.3d at 1317; *MacPhee*, 459 F.3d at 1327-28.

Therefore, even in the event the Court finds some tension with *Roberson*, the final rule remains entitled to *Chevron* deference. The final rule establishes VA's interpretation of the undefined statutory term "claim," and establishes procedures for initiating a "claim," including what kind of submission is necessary to establish a "claim." No statute directly addresses these issues, and *Roberson* and its progeny do not hold otherwise. The final rule reflects VA's interpretation, and implementation, of the relevant statutes. It also reflects VA's considered reconciliation of the sometimes competing fundamental interests in providing veterans with an accessible, informal, sympathetic and pro-claimant claims process, on the one hand, and efficiently producing an enormous volume of timely and accurate benefits decisions on the other. JA6.

D. <u>38 U.S.C. § 5102(c) Is Not To The Contrary</u>

Amici argue that the regulation is contrary to 38 U.S.C. § 5102(c). On its face, section 5102(c) provides that, if VA notifies a claimant that his or her application is incomplete pursuant to 38 U.S.C. § 5102(b) and the claimant fails to complete the application within one year from the date of notification, no benefits may be paid based on that application.

As an initial matter, section 5102(c) applies only to "incomplete applications," and does not relate to "informal claims" or any similar submissions apart from such forms as VA may require to apply for benefits. As discussed above, section 5101(a) authorizes VA to require that claims be submitted "in the form prescribed by the Secretary," which may include the requirement for a specific application form. Section 5102 refers in its caption to "[a]pplication forms furnished upon request" and section 5102(a) provides that, upon request, VA will provide a person with "all . . . forms necessary to apply for [a] benefit." VA has interpreted "incomplete applications" to refer to a submission on an "application form prescribed by the Secretary that is not complete as defined in § 3.160(a)." 38 C.F.R. § 3.155(c). Amici do not, and cannot, show that the statutory reference to "incomplete applications" indicates any congressional intent to mandate acceptance of non-standard submissions.

Indeed, Amici's argument concerning section 5102(c) does not in any way attack VA's authority to require the use of standard forms. Rather, their argument raises the much narrower claim that VA's rule improperly provides less time than section 5102(c) allows for a claimant to complete an incomplete application and preserve an effective date based on the incomplete application. However, that narrow argument fails because the prohibition stated in section 5102(c) does not

constrain VA's authority under section 5101(a)(1) to prescribe the requirements of a claim.

Section 5102(c) does not state that an incomplete application must hold a claimant's effective date of benefits. The only thing section 5102(c) makes clear about whether benefits are payable for a given period is that "no benefit may be paid or furnished by reason of the claimant's application" if it is not completed within one year of the Secretary's notice.

Section 5102(c) is not an effective date statute, and certainly does not displace the broad authority conferred by section 5101. Rather, 38 U.S.C. § 5110 provides that awards are generally effective as of the "date of receipt of application therefor" and does not specify whether this requirement is met by the filing of an incomplete application, or a duly completed one. Section 5102(c), in turn, suggests that VA "may" pay or furnish benefits by reason of the incomplete application provided that it is completed within one year of the date VA's notice under section 5102(b) is sent, but plainly does not require it. "The key word in the statute is 'may.'" *See National Organization of Veterans Advocates, Inc. v. Secretary of Veterans Affairs*, 669 F.3d 1340, 1346 (Fed. Cir. 2012) (statute providing VA "may" accept a private physician's report did not mean VA was required to accept such a report).

Any ambiguity on the question of the statutorily required effective date treatment of an incomplete application is resolved by deferring to VA's view, for two reasons. The first is that any ambiguity between section 5102(c) and section 5110 must be evaluated in light of section 5101(a)(1) and section 501(a)(2). Section 501(a)(2) gives VA authority to designate, by regulation, the form any application must take. Further, as we established above, section 5101 gives VA clear authority to require a claimant to submit not just a completed application form but "a specific claim in the form prescribed by the Secretary[.]" Section 5102(c) does not establish that a submission must be treated as a claim before that requirement is met. *See Fleshman*, 138 F.3d at 1432 ("the applicant will not have satisfied the 'in the form prescribed by the Secretary' requirement of section 5101(a) until he submits the requested information.").

The second reason is *Chevron* deference. VA's interpretation of section 5102(c) is reasonable. By interpreting section 5102(c) as permitting, but not requiring, VA to hold a claimant's effective date of benefits by reason of an incomplete application, VA's reading gives the term "may" its natural effect. Additionally, this reading avoids any tension with section 5101(a)(1), which makes clear that the submission of a "specific claim in the form prescribed by the Secretary" is antecedent to the payment of benefits.

Even if the Court disagrees, and finds that that section 5102(c) establishes a statutory requirement that VA hold a claimant's effective date of benefits for an incomplete application, the import is minimal. First, as noted above, section 5102(c) only refers to incomplete applications under section 5102(b), not to "any communication or action" or some other construction of similar breadth to the prior informal claims regulation. It therefore does not establish that all communications must hold a claimant's effective date of benefits, and the intent to file structure created by the final rule is not inconsistent with it. Second, the final rule largely moots the issue by expressly notifying claimants of the information necessary to constitute a complete claim, *see* 38 C.F.R. § 3.160(a), and by holding a claimant's effective date for up to one year from the date of receipt of the incomplete application form. JA38, 38 C.F.R. § 3.155(c).

## III. <u>The Final Rule's Requirements Concerning NOD's Are Valid</u>

### A. <u>The Secretary's Rulemaking Authority Extends to NOD's</u>

Section 501(a)(2) gives VA the authority to promulgate regulations concerning "the forms of application." Title 38, Chapter 71, which contains statutes governing the AOJ appellate process and the board, repeatedly refers to a request for board review as an "[a]pplication for review on appeal." 38 U.S.C. §§ 7106, 7107, 7108.

B. What Constitutes A "Notice Of Disagreement" Cannot Be Answered At *Chevron* "Step One"

The process for seeking board review begins with the filing of an NOD. 38 U.S.C. § 7105. In *Hamilton*, this Court summarized the relevant legislative history of the Veterans Judicial Review Act (VJRA) and explained that an NOD was meant to "function akin to a notice of appeal." *Hamilton v. Brown*, 39 F.3d 1574, 1583 (Fed. Cir. 1994). While the statute generally does not specify how this notice is to be communicated, it does specify some elements of an NOD. The statute specifies who may file an NOD, and provides that an NOD must be in writing and filed within one year of the mailing of the notice of the AOJ decision. 38 U.S.C. § 7105(b). In essence, the statute defines when and in what manner an NOD must be filed.

However, as this Court made clear in *Gallegos*, the term "notice of disagreement" is not otherwise defined at the statutory level, and the statute does not specify the substantive content a communication must contain in order to constitute an NOD. *Gallegos v. Principi*, 283 F.3d 1309, 1313 (Fed. Cir. 2002). The term "NOD" has no plain or ordinary meaning, but is a term of art particular to VA adjudications of benefit determinations. The term "NOD" is not defined in 38 U.S.C. § 101, or in section 7105. Accordingly, "[a] NOD is defined by [VA] regulations[.]" *Hamilton*, 39 F.3d 1575.

In *Gallegos*, the Veterans Court had invalidated a VA regulation requiring that an NOD express "a desire for appellate review." *Id*. at 1312; *see also* 38 C.F.R. § 20.201 (1992). That requirement is not in the statute. 38 U.S.C. § 7105. Relying on its conclusion that section 7105 contained no statutory "gap" for the Secretary to fill, and on the general pro-claimant nature of the veterans benefits system, the Veterans Court declined to extend *Chevron* deference to VA's regulation requiring that a communication must express a desire for appellate review in order to be an NOD. *Gallegos*, 283 F.3d at 1312.

This Court reversed, holding that "*Chevron* deference applies to VA's implementation of [section] 7105, i.e., [section] 20.201," reasoning that while the statute specifies some requirements for an NOD, it does not "define" an NOD or "suggest sufficient expressions to make a writing an NOD." *Id*. at 1313. Further, the statute "does not suggest that its specifications for an NOD –writing, one-year time limit from notice, etc. – are the only requirements for a valid NOD." *Id*.

The same analysis is due here. Here, the statute does not directly address the sufficiency of a putative NOD not submitted on a form, or that does not identify, at a general level, the claim and associated decision with which the claimant desires to express a disagreement. 38 U.S.C. § 7105. Congress left these gaps for the agency to fill by regulation, and *Chevron* deference is appropriate.

Petitioner insists that VA cannot add any content or requirements beyond those specifically mentioned in the statute, such as a requirement to identify the issue or conditions for which appellate review is sought. *See* Pet. Br. at 24-25. But this Court has already held that "[s]ection 7105 does not preclude other requirements for an NOD." *Gallegos*, 283 F.3d at 1314. A wide variety of communications could meet the applicable requirements enumerated in 38 U.S.C. § 7105 without being fairly described as NODs. It is possible for a communication to be (1) in writing; (2) submitted by a veteran to the AOJ; and (3) submitted within one year of notice of the decision on a claim, but say nothing whatsoever about the veteran's recently decided compensation claim. A change of address notice could meet all three requirements. The only reason that *any* communication possessing these characteristics does not satisfy the statute is that the communication must correspond to the operative statutory term, "notice of disagreement," which is an undefined term. It is both appropriate, and necessary, to specify the substantive requirements for an NOD in regulation.

C. <u>The Final Rule Does Not Require Unreasonable Specificity</u>

A form is only required when the AOJ provides one to the claimant for the purpose of initiating the appeal. JA39-40. For all cases in which no such NOD form is provided, the standard for determining whether the claimant has submitted

a NOD is unchanged from prior regulations. *Compare* 38 C.F.R. § 20.201 (2014); JA40; 38 C.F.R. § 20.201(b).

In cases where the form is required, the standard to complete the form is not onerous. Claimants are required to provide: (1) information to identify the claimant; (2) the claim to which the form pertains; (3) "[a]ny information necessary to identify the specific nature of the disagreement if the form so requires" which in compensation claims means the claimant must "enumerate[] the issues or conditions for which appellate review is sought, or provide[] other information" to identify the claimant and the nature of the disagreement; and (4) the claimant's signature. JA39; 38 C.F.R 19.24(b)(2). The final rule clearly explains that, in practice, the requirement to identify the nature of the disagreement is met by the minimal "identification of an issue, such as a 'shoulder disability,'. . . even if the form on its face requires additional information." JA27. This requirement generally to identify the decision with which the claimant disagrees is rationally related to the orderly adjudication of veterans' appeals.

The final rule also contains an important failsafe against the possibility that VA will accept a form for processing, but later determine it did so in error and reject the form as incomplete. Claimants are "not required to cure or correct the filing of an incomplete form by filing a completed version of the correct form unless VA informs the claimant or his or her representative that the form is

incomplete and requests clarification." JA39 (38 C.F.R. § 19.24(b)(1)). In other words, VA deliberately placed the burden on itself to determine that a form is incomplete before the claimant can be asked to cure any deficiency. JA27-28. This ensures that the question of whether or not the form is "complete" will only arise when truly necessary.

1. The Revised Rule Is In Accord With Prior Regulations

The final rule does not change the amount of substantive information that is required in order for a claimant to have submitted an NOD. The final rule requires only that claimants specify the "issues or conditions for which appellate review is sought," and VA explained that this standard is met by identifying a body system or group of symptoms at a high level of generality. JA27, 39-40. Prior regulations likewise required the claimant to identify "specific determinations with which the claimant disagrees" whenever the AOJ decision addressed multiple issues. 38 C.F.R. § 20.201 (2014). This requirement flows from the fact that an NOD is an expression of disagreement with a particular agency "determination" - it is necessary to identify the determination in question in order to disagree with it. *Id*. Therefore, the requirement that the claimant identify the issue for which appellate review is sought is not a new "technical pleading requirement" created for the first time by the final rule.

In fact, in *Ledford v. West*, 136 F.3d 776, 780 (Fed. Cir. 1998), this Court recognized that the prior regulation required a claimant to identify a specific determination in order to have filed an NOD. "While his legal reasoning need not appear in the NOD, *see* 38 C.F.R. § 20.201 (1997) . . . an NOD must have indicated a disagreement with a specific determination." *Id*.

*Collaro v. West*, 136 F.3d 1304 (Fed. Cir. 1998) is not to the contrary. In *Collaro*, this Court held that a "vague NOD" serves to raise all potential theories of error for appellate consideration, and the agency's efforts to frame the issue cannot operate to foreclose potential bases for disagreement, including "constitutional and notice and rulemaking issues[.]" *Collaro*, 136 F.3d at 1309-1310. But, the NOD at issue in *Collaro* identified the issue at a high level of generality and under the final rule this is all that is required for a form to be considered complete. *See Id*. at 1305. Indeed, despite being characterized by the Court as "vague," Mr. Collaro's NOD provided more information than the final rule requires because he specified a particular rating. *Id*. Finally, we note that in the course of holding that an NOD must be construed broadly, *Collaro* did not invalidate the requirement in prior 38 C.F.R. § 20.201 that a claimant must identify the "specific determinations" with which he or she disagrees.

2. <u>Petitioner's Argument From *Maggitt* and *Ledford* Is Inapposite</u>

Relying on *Maggitt* and *Ledford*, petitioner argues that "this Court has long held that an 'NOD need not be expressed in any special wording, and *the legal reasoning supporting the NOD need not appear in the NOD.*'" Pet. Br. 25; *citing Maggitt v. West*, 202 F.3d 1370, 1375 (Fed. Cir. 2000); *see also Ledford v. West*, 136 F.3d 776, 780 (Fed. Cir. 1998) (emphasis supplied by petitioner). This statement is not contrary to the final rule, for two reasons.

First, as just noted, the final rule does not require claimants to provide legal reasoning underlying their disagreement in order to complete a standard NOD form, nor does the final rule require a particular allegation of factual error. The final rule only requires that claimants enumerate the "issues or conditions for which appellate review is sought." JA39; 38 C.F.R. § 19.24(b)(2)(iii). A requirement to identify disagreement with VA's decision pertaining to a "shoulder disability" is not comparable to a requirement to supply theories of error. *See* JA27; *Ledford*, 136 F.3d at 780.

Second, *Maggitt* and *Ledford* rely on the prior regulation and, therefore, provide no authority for the proposition that the standard NOD required by the final rule is contrary to statute, or an unreasonable exercise of VA's authority. *Maggitt*, 202 F.3d at 1375; *Ledford*, 136 F.3d at 780.

3. The Final Rule Is Not Inconsistent With Section 7105

Petitioner argues that the final rule requires claimants to state their objections to VA's decision with the level of specificity required in a substantive appeal. Pet. Br. 25-27. Thus, petitioner argues, VA has in effect required claimants to make specific arguments in order to receive a statement of the case, rather than in response to one, which would be inconsistent with the statutory structure.[9] Pet. Br. 26. This is incorrect.

Petitioner cites no binding authority indicating that identifying an issue or condition at a high level of generality is equivalent to the level of specificity required in the formal appeal, and we are aware of none. This is unsurprising, because formal appeals to the board do not just identify the decision with which the claimant disagrees, but "should set out specific allegations of error of fact or law." 38 U.S.C. § 7105(d)(3). While VA must liberally construe all claimant filings and the evidence of record, the 7105(d)(3) requirement can lead to a claimant being required to express, at a high level of generality, some relatively specific objections. For example, this Court has held that the board is not required to supply reasons and bases for concluding that a medical examiner is competent

[9] After receiving an NOD, VA must take "such development or review action as it deems proper" in attempt to resolve the disagreement. 38 U.S.C. § 7105(d)(1). If the disagreement is not resolved, VA must issue a statement of the case (SOC), after which the claimant has 60 days in which to file a formal appeal. 38 U.S.C. § 7105(d)(1) – (d)(3).

unless that issue is raised by the veteran. *Sickels v. Shinseki*, 643 F.3d 1362, 1366 (Fed. Cir. 2011); *see also Parks v. Shinseki*, 716 F.3d 581, 585 (Fed. Cir. 2013) *cert. denied* 134 S.Ct. 2661 (2014) ("[w]hile . . . a *pro se* veteran's objection to the selection of a particular medical professional will be read sympathetically, there must be an objection"); *see Maggitt*; 202 F.3d at 1378 (acknowledging potential applicability of the "doctrine of exhaustion" when justified by a "case-by-case analysis" but avoiding "an across-the-board presumption for or against invocation of the exhaustion doctrine."). An objection to the selection of a particular medical professional, or an argument that a particular VA circular is invalid (as in *Ledford*), is a much more detailed assertion than "shoulder disability," which is all that is required to complete the standard NOD form. JA27. Accordingly, a rule requiring that the claimant identify the "issues or conditions for which appellate review is sought" does not prematurely require a specific allegation of error of fact or law. *See Ledford*, 136 F.3d at 780.

## IV. The Attorney Representation Argument Is Inapposite And Without Merit

Finally, petitioner argues that the final rule is inconsistent with 38 U.S.C. § 5904, which prohibits attorneys from charging a fee with respect to services provided in connection with a proceeding before VA before the date on which an NOD is filed. Pet. Br. 27-29, *see* 38 U.S.C. § 5904(c)(1). Petitioner does not argue that the final rule is in any way directly contrary to 38 U.S.C. § 5904.

Rather, petitioner bases this argument entirely upon its characterization of the final rule as creating an adversarial claims process. As we establish above, the substantive burdens on claimants have not changed absent the *de minimis* burden associated with filling out a form. The final rule, accordingly, does not implicate the constitutionality of statutory limits on paid attorney representation.

## CONCLUSION

For these reasons, we respectfully request the Court to deny the petition.

Respectfully submitted,


BENJAMIN C. MIZER
Principal Deputy
Assistant Attorney General

/s/ Robert E. Kirschman, Jr.
ROBERT E. KIRSCHMAN, JR.
Director

/s/ Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 408
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-0319
Fax: (202) 514-8624

Attorneys for Respondent

OF COUNSEL:

DAVID J. BARRANS
Assistant General Counsel

BRIAN D. GRIFFIN
Deputy Assistant
General Counsel
Department of Veterans Affairs
810 Vermont Ave., N.W.
Washington, D.C. 20420


June 12, 2015

CERTIFICATION OF COMPLIANCE

Pursuant to FRAP 32(a)(7)(B), I certify that the forgoing brief contains 13,903 words, excluding the parts of the brief exempted by the rule. The brief complies with the typeface requirements and type style requirements of FRAP 32(a)(5) and has been prepared using Times New Roman 14 point font, proportionally spaced typeface.

/s/ Martin F. Hockey, Jr.
Martin F. Hockey, Jr.
Counsel for Respondent

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this _12th_ day of

________June________, __2015___, a copy of the foregoing

____________Brief For Respondent____________

was filed electronically.

☑ This filing was served electronically to all parties by operation of the Court's electronic filing system.

_____/s/ Martin F. Hockey, Jr._____

☐ A copy of this filing was served via:

- ☐ hand delivery
- ☐ mail
- ☐ third-party commercial carrier for delivery within 3 days
- ☐ electronic means, with the written consent of the party being served

To the following address:

______________________________