*In The*
**United States Court of Appeals**
**for the Federal Circuit**

**No. 2015-7021**

---

**VETERANS JUSTICE GROUP, LLC,**
Petitioner,

v.

**SECRETARY OF VETERANS AFFAIRS,**
Respondent.

---

On petition for review pursuant to 38 U.S.C. Section 502.

# CORRECTED REPLY BRIEF OF PETITIONER VETERANS JUSTICE GROUP, LLC

DOUGLAS J. ROSINSKI
DOUGLAS J. ROSINSKI, ESQ. INC.
701 GERVAIS STREET
SUITE 150-405
803.265.9555 (TEL)
888.492.3636 (FAX)
DJR@DJROSINSKI.COM
COUNSEL FOR PETITIONER

## CERTIFICATE OF INTEREST

Counsel for Petitioner Veterans Justice Group, LLC, certifies the following:

1. The full name of every party or amicus represented by me is:

   Veterans Justice Group, LLC.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   No others.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   None.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   Douglas J. Rosinski
   Douglas J. Rosinski, Esq. Inc.
   701 Gervais Street
   Suite 150-405
   Columbia, SC 29201

Dated: June 29, 2015 /s/ Douglas J. Rosinski

# TABLE OF CONTENTS


Certificate of Interest ........................................ i

Table of Contents ........................................ ii

Table of Authorities ........................................ iii

Statement of Related Cases ........................................ v

Statement of the Issue ........................................ 1

Summary of the Reply Argument ........................................ 2

Reply To The Secretary's Arguments ........................................ 4

I. VJG Does Not Question The Secretary's Authority To Require Forms Or Establish Reasonable Information Requirements .......... 4

II. The Secretary Failed to Identify Any Factual Basis For Choosing The Particular Changes In The Final Rule .......... 6

III. A Pro-Claimant System Does Not Put Benefits At Risk From A Claimant's Lack of Legal Sophistication .......... 7

IV. *Chevron* Does Not Authorize Piecemeal Dismantling Of The Congressionally Mandated Non-Adversarial VA System .......... 8

V. The Secretary's New NOD Requirements Obviates 38 U.S.C. Section 7105(d) .......... 10

VI. The Final Rule Forces Rights-Affecting Legal Decisions On Veterans Prohibited From Seeking Paid Representation .......... 14

Conclusion ........................................ 16

Certificate of Compliance ........................................ 17

Certificate of Service ........................................ 18

# TABLE OF AUTHORITIES

## Cases

*Brown v. Gardner*, 513 U.S. 115 (1994) .......... 10

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984) .......... 6, 9

*Collaro v. West*, 136 F.3d 1304 (Fed. Cir. 1998) .......... 13

*Cushman v. Shinseki*, 576 F.3d 1290 (Fed. Cir. 2009) .......... 15

*Majeed v. Principi*, 16 Vet. App. 421 (2002) .......... 7

*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*,
669 F.3d 1340 (Fed. Cir. 2012) .......... 6

*Sears v. Principi*, 349 F.3d 1326 (Fed. Cir. 2003) .......... 8

*Shinseki v. Sanders*, 556 U.S. 396 (2009) .......... 14

*Sursely v. Peake*, 551 F.3d 1351 (Fed. Cir. 2009) .......... 10

*Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305 (1985) .......... 8, 9, 14

## Statutes and Regulations

5 U.S.C. § 706 .......... 5, 6

38 U.S.C. § 501 .......... 4, 5, 14

38 U.S.C. § 7105 .......... 11

38 C.F.R. § 20.201 .......... 10

**Other**

H.R. Rep. No. 100-963 ........................................ 8

REVIEW OF ALLEGED DATA MANIPULATION AT THE VA REGIONAL OFFICE HOUSTON, TX, VA Office of Inspector General Rpt. No. 14-04003-298 (Sep. 30, 2014) ........................................ 6

VA Form 9 ........................................ 11

VA Form 21-0958 ........................................ 13

## STATEMENT OF RELATED CASES

Petitioner is aware of the following cases which are or reasonably appear to be related to this case:

The Court has determined that *NOVA v. DVA*, No. 15-7025, and *American Legion v. DVA*, No. 15-7061, are companion cases which will be assigned to the same merits panel.

*Paralyzed Veterans of America v. DVA*, No. 15-7080 and *Disabled American Veterans v. DVA*, No. 15-7081, are two later filed petitions regarding the same rule that are likely to be affected by the resolution of this case.

Dated: June 29, 2015

/s/ Douglas J. Rosinski

Douglas J. Rosinski, Esq. Inc.
701 Gervais Street
Suite 150-405
803.265.9555 (tel)
888.492.3636 (fax)
djr@djrosinski.com
Counsel for Petitioner

## STATEMENT OF THE ISSUE

Congress authorized the Secretary to prescribe necessary rules and regulations to operate the Department of Veteran Affairs, but only so far as they are consistent with the controlling laws prescribed by Congress. In seeking to improve VA's "efficiency" in the final rule,[1] the Secretary acted contrary to Congressional intent to be uniquely solicitous to veterans in a "non-adversarial" and "pro-claimant" adjudicatory process by shifting key legal duties to unsophisticated veteran claimants and appellants without access to paid representation. Further, the Secretary acted without providing any factual basis for his choices.

The challenged portions of the final rule, therefore, are properly struck to the extent that the Secretary created adversarial barriers to veterans applying for or appealing denials of benefits.

[1] VJG will refer to the challenged rulemaking as the "final rule" and individual requirements therein as "new" rules. Regulations in effect before the effective date of the final rule are the "prior" regulations.

## SUMMARY OF THE REPLY ARGUMENT

The Veterans Justice Group, LLC (VJG), does *not* challenge the Secretary's authority to craft rules under which to operate the Department of Veterans Affairs. VJG has challenged portions of the Secretary's final rule as exceeding his authority because he has pockmarked the Congressionally-established veterans benefits adjudication process with "traps for the unwary" without providing a factual basis for his changes. Although the Secretary asserts that his final rule is more "pro-claimant" than the prior rule, he admits that previously acceptable benefit applications and appellate notices will now be unacceptable. VJG submits that a rule that restricts access to the VA benefits system is not more "pro-claimant" or "veteran friendly."

The Secretary's response regarding his dramatic change in content requirements for an acceptable Notice of Disagreement (NOD) fails most dramatically. First, the Secretary failed to adequately explain how the final rule is consistent with the three-step, notice, statement of case, formal appeal, process established by statute. Further, the Secretary's arguments regarding content requirements are exposed as mere litigating positions by comparison with the Department's longstanding practices, including

accepting a simple check-in-a-box on a form to formally appeal "all" the issues contained in a statement of the case.

The Secretary's repeated reliance on *Chevron* deference is also telling. While the Secretary conceded, as he must, that efforts to make the VA process more efficient have to recognize "the longstanding informal, non-adversarial, pro-claimant nature of the VA system," he continually relied on *Chevron* to justify each encroachment on that unique process. VJG submits that the Secretary cannot do by a thousand *Chevron* nibbles what he cannot do in a single bite under *Walters*.

Finally, whatever the merits of the Secretary's final rule, VJG submits that only Congress can effect many of the changes the Secretary finds necessary. Thus, the portions of the final rule exceeding the Secretary's authority are properly stricken.

## REPLY TO THE SECRETARY'S ARGUMENTS

The Secretary's brief, for all its icy analysis, repeatedly dismisses his duty to preserve the "unique" non-adversarial nature of the adjudicatory process under his stewardship. Nor does he persuasively rebut VJG's arguments that the final rule improperly created, and burdened veterans with, a newly adversarial claims process – an action which exceeds the Secretary's authority and is contrary to Congressional mandate and the country's promise to its veterans.

Whether or not the changes will ease VA administrative burdens, something for which the Secretary failed to make any substantive factual showing, he cannot jettison the fundamental, non-adversarial, nature of the veterans benefits process to do so. Thus, because the Secretary's promulgation of the *offending* portions of the final rule exceeded his authority, c*ontra* 38 U.S.C. § 501(a), VJG is entitled to the relief it seeks.

### I. VJG Does Not Question The Secretary's Authority To Require Forms Or Establish *Reasonable* Information Requirements

As an initial matter, the Secretary's Statement of the Issues misstates VJG's position regarding changes to the NOD requirement in the final rule. The issue presented was not "[w]hether the Secretary's regulations requiring that [NODs] be on standard forms are a reasonable exercise of

the Secretary's authority and otherwise are not arbitrary, capricious, an abuse of discretion or inconsistent with law." Sec'y Br. at 1-2. VJG's issue is that there "is no authority for the Secretary's requirement that a NOD must enumerate the *specific* issues or conditions for which appellate review is sought." VJG Br. at 25 (original emphasis). The Secretary's misconception of the issue leads the Court down the wrong road.

However, to the extent that the Secretary asserts that he has *unlimited* authority to request information from veterans under 38 U.S.C. section 501, VJG does disagree. *See* Sec'y Br. at 16 (citing *Mansfield v. Peake*, 525 F.3d 1312, 1317 (Fed. Cir. 2008) for the proposition that "Congress has provided the VA with authority to establish the requirements for 'claims' for veterans' benefits."). Each action under section 501(a) must be "consistent" with the "laws administered by the Department." 38 U.S.C. § 501(a). Thus, the Secretary's information requests must be consistent with the Congress's overall choice of a non-adversarial process and also not "arbitrary" or "capricious." *See* 5 U.S.C. § 706(2)(A). As described below, while the Secretary defended his authority to require forms, he failed to provide *factual* bases of his choices for the information content of those forms, thus rendering his choices arbitrary as a matter of law.

## II. The Secretary Failed to Identify Any Factual Basis For Choosing The Particular Changes In The Final Rule

The entire suite of changes in the final rule is based on conjecture and speculation. A regulation is not arbitrary and capricious if there is a "rational connection between the facts found and the choice made." Sec'y Br. at 14 (citing *Nat'l Org. of Veterans Advocates, Inc. v. Sec'y of Veterans Affairs*, 669 F.3d 1340, 1348 (Fed. Cir. 2012) ("*NOVA*")). Other than an opaque reference to a single "pilot test" at the Houston regional office,[2] the Secretary presented no factual basis for any of the process changes he choose to implement. The Secretary's actions, therefore, are arbitrary and capricious as a matter of law. 5 U.S.C. § 706(2)(A). Thus, the final rule fails to satisfy either the Administrative Procedure Act (APA) or *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). *See NOVA* at 1348 ("Although courts sometimes analyze a regulation

---

[2] Even this factual support is questionable. *See* REVIEW OF ALLEGED DATA MANIPULATION AT THE VA REGIONAL OFFICE HOUSTON, TX, VA Office of Inspector General Rpt. No. 14-04003-298 (Sep. 30, 2014) ("We substantiated the allegation that the employee inappropriately cleared, changed, and cancelled controls in the electronic record used to track and identify benefits claims without taking proper actions to complete the claims . . . *making these unfinished claims appear[] completed*." (emphasis supplied)).

under both the second step of *Chevron* and the APA independently, the issues raised will often overlap.”).

### III. A Pro-Claimant System Does Not Put Benefits At Risk From A Claimant’s Lack of Legal Sophistication

The Secretary’s assertion that the final rule creates a claims process that is “*more claimant friendly*” than the previous rule cannot withstand scrutiny. Sec’y Br. at 24 (original emphasis); *see also id.* (“No matter what analytical structure is applied, the final rule is pro-claimant and non-adversarial.”)’ *id.* at 12 (“final rule is pro-claimant and non-adversarial”). It “is well settled that the veterans-benefits system is a pro-claimant system.” *Majeed v. Principi*, 16 Vet. App. 421, 433 (2002) (citing *Brown v. Gardner*, 513 U.S. 115 (1994)). The Secretary, however, has a unique notion of “pro-claimant” in light of the undisputed result of the final rule that (1) benefit claims which previously would be adjudicated will no longer be accepted, *see, e.g.,* Sec’y Br. at 29 (only adjudicates claims “within the scope of issues enumerated”), and (2) submissions which previously would have been accepted as a Notice of Disagreement (NOD), will no longer be. *See, e.g., id.* at 52 (must now “enumerate” specific issues or conditions for which appellate review is sought). Thus, whatever else is true and all else being

equal, it can only be reasonably concluded that fewer applications and fewer appeals will be adjudicated because of the new requirements.

VJG submits that a system which throttles applications and restricts the ability to appeal through the imposition or shifting of legal requirements – whatever the justification or favorable result – is *not* more "friendly" or "pro-claimant."

## IV. *Chevron* Does Not Authorize Piecemeal Dismantling Of The Congressionally Mandated Non-Adversarial VA System

The characterization of the VA adjudication system as "veterans friendly," pro-claimant," and "non-adversarial" or "adversarial" is not semantics: it is the cornerstone of the "unique" veterans benefits process established by Congress. *See, e.g., Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 323-24 (1985) ("surely Congress desired that the proceedings be as informal and nonadversarial as possible"). "Congress has designed and fully *intends to maintain* a beneficial non-adversarial system of veterans benefits." H.R. Rep. No. 100-963 at 13 (*cited in Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir 1998)) (emphasis supplied). Further, "[a]mbiguities in the veterans' statutes" may be resolved through regulation "as long as the agency's action is reasonable and consistent in light of the statute *and congressional intent*." *Sears v. Principi*, 349 F.3d 1326,

1329 (Fed. Cir. 2003) (quoting *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 691 (Fed. Cir. 2000) (emphasis added)). The Secretary's various pleas for *Chevron* deference fail to recognize that this is a *two-part* test. *See* Sec'y Br. at 12, 19, 21-22, 23, 42-44. Indeed, the Secretary appears to specifically reject the notion that Congressional intent to maintain a "veteran friendly" and "non-adversarial" VA adjudication system is relevant to his "gap filling" regulations. Sec'y Br. at 22 (issue "not whether a regulation contravenes a general Congressional policy gleaned from multiple sources").

VJG challenges the Secretary's position that he can achieve piecemeal what he cannot by direct action. It is undisputed that if "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842-43. With regards to the intentionally unique VA system, Congress's "clear" intent is that "the proceedings be as informal and nonadversarial as possible." *Walters*, 473 U.S. at 323-24.

Thus, when applied in the VA benefits context, *Chevron* is properly read to require the Secretary to maintain the intended informal and non-adversarial nature of the process. Yet, the Secretary argued that he can fill

each individual "gap" without regard to the *overall* intent of Congress. This crabbed interpretation of *Chevron* leads to a direct conflict with the oft-quoted holding that "interpretive doubt is to be resolved in the veteran's favor." *Brown v. Gardner*, 513 U.S. 115, 118 (1994).

The Secretary's position ignores *Gardner*. VJG's position is that *Gardner* properly requires the overall impact of a related series of *Chevron* "interpretations" in a single rulemaking to "give effect to the unambiguously expressed intent of Congress" regarding the unique nature of the VA process. *See, e.g., Sursely v. Peake*, 551 F.3d 1351, 1358 (Fed. Cir. 2009) ("there is no statutory language that requires the Secretary to ignore the practical situation of the veteran applying for benefits."). Ignoring *Gardner*, as the Secretary has done, treats the VA process exactly the same as any other agency – a result Congress has repeatedly repudiated.

## V. The Secretary's New NOD Requirements Obviates 38 U.S.C. Section 7105(d)

On its face, and despite the Secretary's protestations, new section 20.201 improperly and prematurely burdens veteran appellants with requirements Congress explicitly mandated *be based on* a statement of the case, *not* as a *pre-requisite to* a statement of the case, thus making a notice of disagreement *and* a formal appeal redundant. *Compare* new 38 C.F.R.

§ 20.201(a)(4), *with* 38 U.S.C. § 7105(d)(3). The Secretary concedes that a claimant must now "enumerate[] the *issues or conditions* for which appellate review is sought" and not just identify 'specific *determinations* with which the claimant disagrees' whenever the AOJ decision addressed multiple issues" as in the prior rule. Sec'y Br. at 52 (citing 38 C.F.R. § 20.201 (2014)) (emphasis supplied). Whether or not "onerous," this level of specificity was not previously required until the formal appeal stage, after the VA issued a statement of the case.

The Secretary argued that "Petitioner cites no binding authority indicating that identifying an issue or condition at a high level of generality is equivalent to the level of specificity required in the formal appeal." Sec'y Br. at 56. Yet, the "VA Form 9," which the Secretary has long *required* to perfect a formal appeal, contains a *box* for an appellant to *check* if he or she "want[s] to appeal *all of the issues* listed on the Statement of the Case and any Statement of the Case that [the] local VA office sent" them. VA Form 9, § 9.A (Nov 2009) (emphasis supplied). Thus, designation of "all of the issues" contained in the decision document has long been sufficiently detailed for the Secretary to accept as "specific allegations of error of fact or law" pursuant to 38 U.S.C. section 7105(d)(3).

Yet, the Secretary in his brief asserted that a NOD is acceptable with a "*high[er]* level of generality" than a formal (i.e., substantive) appeal. Sec'y Br. at 56 (*not* required to state "objections to VA's decision with the level of specificity required in a substantive appeal"). As the Secretary accepts a blanket designation of "all of the issues" in a "substantive appeal" form (i.e., VA Form 9) according to his argument, he must then accept *at least* that level of generality in an NOD. Under he final rule, he does not.

But, under the prior rule, he did: the required "specific determination" was identification of the *date* of the rating decision desired to be appealed. If the claimant also *broadly* expressed "disagreement" and a desire to appeal the specifically identified rating decision, the Secretary previously accepted NODs even if the appellate merely stated that he wanted to appeal "all" issues addressed in the specified rating decision without further elucidation. *See* JA334 (example 2012 NOD) and JA335 (acceptance of same NOD). Despite the promise of accepting a "high level of generality," providing the *same information* on the NOD form would *not* satisfy current section 20.201. *See, e.g.*, Sec'y Br. at 52 (claimant must "*enumerate*[] the issues or conditions for which appellate review is sought" (emphasis supplied)).

Further, the Secretary's strained logic seemingly shows that the Secretary could increase processing efficiency by simply reversing the order of the currently required forms, i.e., using VA Form 9 to provide notice of a desire to appeal "all" or (voluntarily) designated issues, and VA Form 21-0958[3] to identify the *specific* issues and conditions for formal appeal after an SOC. And that is precisely the previous process, only with a form required for a NOD. *See, e.g., Collaro v. West*, 136 F.3d 1304, 1309 (Fed. Cir. 1998) (veteran filed "a vague NOD," "agency responded by framing the issues in a statement of the case," and veteran later "cut the rough stone of his NOD to reveal the constitutional radix of his issue that lay within").

Whether or not the new NOD content requirement is "technical pleading," Sec'y Br. at 53, it is not reasonably argued that it is "easier" to identify the "issues or conditions for which appellate review is sought" than to identify a rating decision by date and expressing a desire to appeal "all" the issues raised therein. Similarly, the Secretary's final rule *does* change the *amount* of substantive information that is required in an NOD

---

[3] VA Form 21-0958 (Jan 2015) is the currently required "Notice of Disagreement" form

as "I want to appeal all the issues" is no longer adequate. *Contra id.* Thus, whatever their definition, in excluding previously acceptable NODs, the final rule is not reasonably characterized as "veteran friendly" or "pro-claimant." *Contra id.* at 57.

In sum, restoring the three-step appeal process established by Congress cures the defects in the Secretary's final rule regarding NODs. Further, simply requiring the appropriate form at the appropriate point in the process offers at least the promise of the increased efficiency sought by the Secretary, without trampling the well-established principles of the existing statutory process. Such a realignment of forms and content action is well-within the Secretary's authority. 5 U.S.C. § 501(a).

## VI. The Final Rule Forces Rights-Affecting Legal Decisions On Veterans Prohibited From Seeking Paid Representation

"[T]he system for administering benefits should be managed in a sufficiently informal way that there should be no need for the employment of an attorney to obtain benefits to which a claimant was entitled." *Walters*, 473 U.S. at 321 (citing *United States v. Hall*, 98 U.S. 343, 352-355 (1879)); *see also Shinseki v. Sanders*, 556 U.S. 396, 412 (2009) ("the veteran is often unrepresented during the claims proceedings"). Nothing in the Secretary's brief, however, challenges the conclusion that the final

rule shifts the *legal* burdens of identifying *all* initial claims and benefits, and *all* the legal and factual errors on appeal to claimants. Further, these burdens arise and must be carried during the period where Congress has prohibited those claimants from retaining paid counsel.

Although the Secretary brushes off the import, Sec'y Br. at 57-58, a veteran's disability benefit entitlement is a property interest protected by the Fifth Amendment to the United States Constitution. *Cushman v. Shinseki,* 576 F.3d 1298 (Fed. Cir. 2009). And, as the Secretary makes clear throughout his brief, the failure to properly fill out an application or to identify the specific "issues or conditions" which to appeal can result in the permanent denial of otherwise earned benefits.

Such legal traps for the unwary cannot be reconciled with the basis for upholding the attorney fee restrictions in *Walters* or the factual foundation for *Sanders*. VJG again submits that if a veteran's property rights can be lost through ignorance of, or a lack of sophistication in, the law, veterans must be afforded the same rights as any other citizen to elect paid representation. Thus, either the final rule must be modified or 38 U.S.C. section 5904 and the associated case law harmonized with the new line of adversarial adjudication drawn by the Secretary.

## CONCLUSION

The Secretary exceeded his authority in coldly changing Congress's carefully crafted veterans benefits process to seek bureaucratic efficiency over fairness to veterans and fidelity to Congressional mandate. And, he did so without any factual basis supporting his conclusion that the desired efficiencies would result. Petitioner, therefore, respectfully requests that the Court review the Secretary's rulemaking, strike the offending rules, and order any further relief that the Court finds appropriate.

/s/ Douglas J. Rosinski
DOUGLAS J. ROSINSKI, ESQ., INC.
701 GERVAIS STREET
SUITE 150-405
COLUMBIA, SC 29201
803.256.9555 (TEL)
888.492.3636 (FAX)
DJR@DJROSINSKI.COM
COUNSEL FOR PETITIONER

Dated: June 29, 2015

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type volume limitations of Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 29(d). According to the word-count tool of the word processing system used in preparing this brief (Microsoft Word 2011), this brief contains 3,119 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 15 point type Garamond font.

/s/ Douglas J. Rosinski
DOUGLAS J. ROSINSKI, ESQ., INC
701 GERVAIS STREET
SUITE 150-405
COLUMBIA, SC 29201
803.256.9555 (TEL)
888.492.3636 (FAX)
COUNSEL FOR PETITIONER
VETERANS JUSTICE GROUP, LLC

Dated: June 29, 2015

## **CERTIFICATE OF SERVICE**

I certify that I served a copy of the foregoing *Reply Brief of Petitioner Veterans Justice Group, LLC,* on counsel of record on June 29, 2015, via the Court's electronic filing system (CM/ECF).

Douglas J. Rosinski, Esq., Inc
701 Gervais Street
Suite 150-405
Columbia, SC 29201
803.256.9555 (tel)
888.492.3636 (fax)
djr@djrosinski.com

/s/ Douglas J. Rosinski
Counsel for Petitioner
Veterans Justice Group, LLC